[No. 32820-4-I.    Division One.    November 14, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. DARIN
WILSON FLAKE, *Appellant*.

*David L. Donnan*, for appellant.
*David F. Thiele, Prosecuting Attorney*, for respondent.

SCHOLFIELD, J. — Darin Wilson Flake appeals the judgment and sentence entered against him on June 1, 1993, for one count of vehicular assault and one count of "hit and run injury accident". He argues that the trial court abused its discretion by concluding that the crimes were not the same criminal conduct. He also contends that the trial court erroneously ordered the two sentences to run consecutively when one sentence was outside the standard range because doing so amounted to imposing two exceptional sentences. Alternatively, he argues that even if the court may impose two exceptional sentences, there were insufficient aggravating factors here to support both sentences. Finally, Flake argues that imposing the sentences consecutively caused his total confinement to exceed the individual statutory maximum sentence for each crime. We affirm.

On May 7, 1993, Darin Wilson Flake pleaded guilty to one count of vehicular assault and one count of "hit and run injury accident". The information identified 24-year-old Mitsuhide Teruya as the victim of both crimes. The charges read:

COUNT I: VEHICULAR ASSAULT, committed as follows: That the defendant, on or about the 27th day of March, 1993, did unlawfully operate a motor vehicle in a reckless manner and while under the influence of intoxicating liquor and any drug and this conduct was the proximate cause of serious bodily injury to another person, to-wit: Mitsuhide Teruya; proscribed by RCW 46.61.522, a felony, and

COUNT II: HIT AND RUN INJURY ACCIDENT, committed as follows: That the defendant, on or about the 27th day of March, 1993, did operate a motor vehicle which was involved in an accident which resulted in injury to another person, to-wit: Mitsuhide Teruya, a human being, and knowing that he

had been involved in the accident, the defendant did not immediately stop such vehicle at the scene of such accident and did not remain at the scene of such accident until all of the following requirements were fulfilled: Providing his name, address, insurance company, insurance policy number, vehicle license number and exhibit his vehicle driver's license to any person struck or injured or the driver or any occupant of, or any person attending, such vehicle collided with, and render to any person injured in such accident reasonable assistance; proscribed by RCW 46.52.020, a felony.

At Flake's sentencing hearing, defense counsel stated on the record that he did not object to witnesses testifying and he had "advised [the prosecutor] that . . . anybody who wishes to speak on behalf of the victim is certainly more than welcome to do so". Mitsuhide Teruya's attorney, Joseph Hunt, testified about the catastrophic injuries Teruya suffered as a result of the assault.[1] The victim impact statement Hunt prepared similarly described Teruya's injuries and documented the extreme emotional and financial consequences the injuries caused him and his family. Numerous other letters from friends likewise recounted Teruya's devastating injuries. While Mitsuhide Teruya was the only victim named in the information, Yoo-Mee Park and Junichi Komazaki were also in Teruya's car and were injured when the accident occurred. According to Hunt's undisputed testimony, Yoo-Mee Park suffered abrasions and had glass in her hand that required surgical removal,[2] and Junichi Komazaki suffered a broken collarbone and abrasions on his forehead.

According to Hunt's unchallenged testimony and the undisputed facts asserted in Teruya's victim impact statement, Flake had used drugs before he began driving on the day of the collision. He had no driver's license or insurance, and he was also a habitual traffic offender. Hunt listed

---

[1]Teruya suffered an extreme injury to his spinal column just below his brain stem, and as a result he is permanently paralyzed from his chin down. He will never breathe again without mechanical assistance, and he most likely will never speak again.

[2]The trial court noted during the hearing that it had a victim impact statement from Yoo-Mee Park, but it is not part of the appellate record.

Flake's extensive criminal history and asked the court to impose an exceptional sentence on the ground that there were multiple victims.

When the trial court asked defense counsel to respond to Hunt's assertion that an exceptional sentence was warranted because there were multiple victims, defense counsel stated:

> [U]nder the real facts doctrine, I believe that we are presently before the Court on this offense with respect to this victim [Teruya]. Those issues are not presently before the Court. The only reason that they are before the Court is that Mr. Hunt was given permission to speak on behalf of the victim. Under those circumstances, I don't believe that that issue is presently available.

Flake did not dispute the fact that Mitsuhide Teruya "suffered substantial grievous bodily injury". However, he argued that the two crimes involved the same criminal conduct and that his offender score therefore should have been 4 for each count, rather than 5. The court disagreed, concluding that the two crimes

> have two separate purposes, if one can say that the vehicular assault has any purpose at all. But certainly the purpose behind hit and run — the objective purpose behind hit and run is to avoid responsibility for one's actions and I think that is a separate criminal purpose and is a crime that requires a different criminal intent than that required for vehicular assault.

Consequently, the standard range for each class C felony was 22 to 29 months. The maximum statutory term for each felony was 5 years. The State recommended 25 months for each conviction, with the sentences to run concurrently. The trial court imposed the recommended 25 months for the hit and run conviction after concluding that there was no basis for an exceptional sentence for it. However, the court imposed an exceptional sentence of 48 months for the vehicular assault conviction.

In addition, the trial court ordered the two sentences to run consecutively because

> to run the sentences concurrently would be inappropriate. I think there's a need to send a very strong message to Mr. Flake that apparently has not been received at any time in the

past and I'm going to order that the sentences for the two offenses run consecutively.

The court's written findings of fact and conclusions of law for the exceptional sentences read:

(a) There are many organs and parts of Mitsuhide Teruya's body that do not function any more. As a result of the collision, he is permanently paralyzed from the chin down. This goes beyond the typical degree of injury in a vehicular assault case.

(b) The effect of these injuries upon the victim Teruya and his parents is extraordinary and irreversible, including the effect upon their social and economic lives. The effect is more than the typical effect in vehicular assault cases.

The court concludes that (a) and (b) above alone support the exceptional sentence imposed. However, the court also finds:

(c) There are multiple victims in this case. RCW 9.94A.400; RCW 9.94A.110.

(d) The defendant knowingly drove without any insurance. Thus, the victims had a greater financial loss than if he had been insured.

(e) The defendant drove when he was not legally permitted to drive, i.e., his privilege to drive had been suspended/revoked at the time of the collision.[3]

Flake appeals.

## I

### SAME CRIMINAL CONDUCT

We first decide whether Flake's crimes of vehicular assault and "hit and run injury accident" are the same criminal conduct for purposes of calculating his offender score. Flake contends that they are. We disagree.

RCW 9.94A.400(1)(a) reads in part:

[W]henever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score: PROVIDED, That if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime. . . . "Same criminal conduct," as used in this subsection, means two or more crimes that require the same criminal

---

[3]A footnote to the findings and conclusions states that the court relied on *State v. George,* 67 Wn. App. 217, 834 P.2d 664 (1992), *review denied,* 120 Wn.2d 1023 (1993) and *State v. Warren,* 63 Wn. App. 477, 820 P.2d 65 (1991), *review denied,* 118 Wn.2d 1030 (1992).

intent, are committed at the same time and place, and involve the same victim.

The Legislature intended the phrase "same criminal conduct" to be construed narrowly. *State v. Vike*, 66 Wn. App. 631, 634, 834 P.2d 48 (1992), *review granted*, 123 Wn.2d 1019 (1994). Whether two or more crimes require the same objective criminal intent can be measured by determining whether one crime furthered another. *State v. Lessley*, 118 Wn.2d 773, 778, 827 P.2d 996 (1992); *see also State v. Lewis*, 115 Wn.2d 294, 302, 797 P.2d 1141 (1990) ("[t]he SRA's [Sentencing Reform Act of 1981] single criminal conduct analysis has approached a single intent as entailing numerous offenses committed as part of a scheme or plan, with no substantial change in the nature of the criminal objective").[4] If any one of the three elements of same criminal conduct is missing, multiple offenses must be counted separately when calculating the offender score. *Lessley*, 118 Wn.2d at 778. The court's decision of whether different crimes involve the same criminal conduct will not be disturbed on appeal unless there was a clear abuse of discretion or a misapplication of the law. *State v. Burns*, 114 Wn.2d 314, 317, 788 P.2d 531 (1990).

Here, as the trial court concluded, Flake's objective purposes for the two crimes were different. When he committed the hit and run, Flake objectively intended to avoid responsibility for the collision by leaving the scene.[5] That intention has no relation to the crime of vehicular assault or any

---

[4]At page 1 of his reply brief, Flake implies that in the context of "same criminal conduct", intent involves mens rea. It does not. Intent in this context means the offender's objective criminal purpose in committing the crime. *In re Holmes*, 69 Wn. App. 282, 290, 848 P.2d 754 (1993).

[5]"Hit and run injury accident" is defined by RCW 46.52.020(1), which reads in part:

"A driver of any vehicle involved in an accident resulting in the injury to or death of any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall then forthwith return to, and in every event remain at, the scene of such accident until he has fulfilled the requirements of subsection (3) of this section [*i.e.*, giving his name, address, insurance information, etc.] . . .".

criminal purpose that might be ascribed to it.[6] In addition, Flake's commission of the hit and run did not further the vehicular assault because the assault was already completed when Flake fled the scene.[7] Also, the two crimes were not part of a scheme or plan (*see Lewis*, 115 Wn.2d at 302). Finally, Flake violated RCW 46.52.020 *after* the vehicular assault occurred, not simultaneously with it, and thus, the two crimes occurred at different times. Because two of the three necessary elements are missing, the two crimes are not the same criminal conduct under RCW 9.94A.400(1)(a). *Lessley*, 118 Wn.2d at 778. The trial court therefore did not abuse its discretion or misapply the law by counting the two crimes separately for Flake's offender score.

## II

### Consecutive Sentencing

Next we decide whether the trial court erred by ordering the two sentences to run consecutively. Flake argues that ordering his two sentences to run consecutively when one of them is outside the standard range was illegal because it amounted to imposing two exceptional sentences.[8] The State maintains that a court may simultaneously impose a sentence outside the standard range and consecutive sentencing.

---

[6]RCW 46.61.522(1) defines vehicular assault as follows:

"A person is guilty of vehicular assault if he operates or drives any vehicle:

"(a) In a reckless manner, and this conduct is the proximate cause of serious bodily injury to another; or

"(b) While under the influence of intoxicating liquor or any drug, . . . and this conduct is the proximate cause of serious bodily injury to another."

[7]Flake's reliance on *In re Holmes*, 69 Wn. App. 282, 848 P.2d 754 (1993) to argue that his flight from the scene furthered the vehicular assault is misplaced. In *Holmes*, the court indicated that if the defendant had stolen a car to facilitate flight after the commission of a robbery and a kidnapping, the car theft may have involved the same objective criminal purpose as the other crimes. *Holmes*, 69 Wn. App. at 291 n.12. Flake's crime of hit and run differs from the situation in *Holmes*, however, because Flake's hit and run did not complete or facilitate the already completed vehicular assault, while Holmes' auto theft might have facilitated the completion of an ongoing robbery or kidnapping.

[8]Flake does not challenge his sentence outside the standard range for the vehicular assault conviction. He expressly concedes that Teruya's injuries far surpass those typical of a vehicular assault and support that exceptional sentence.

Under RCW 9.94A.210(4), an appellate court reviews an exceptional sentence by determining (1) whether the reasons given to support the exceptional sentence are supported by the record under the "clearly erroneous standard", (2) whether those reasons are substantial and compelling to justify departure from the standard range as a matter of law, and (3) whether, under a reasonable person standard, the trial court abused its discretion by imposing a sentence clearly excessive in leniency or severity. *State v. George*, 67 Wn. App. 217, 221, 834 P.2d 664 (1992), *review denied*, 120 Wn.2d 1023 (1993). When a person is sentenced for two or more current offenses, the sentences "shall be served concurrently", but consecutive sentences may be imposed "under the exceptional sentence provisions of RCW 9.94A.120 and 9.94A.390(2)(f) or any other provision of RCW 9.94A.390." RCW 9.94A.400(1)(a). Further, "[a] departure from the standards in RCW 9.94A.400(1) . . . governing whether sentences are to be served consecutively or concurrently is an exceptional sentence subject to the limitations . . . of this section". RCW 9.94A.120(15).

Flake relies on *State v. McClure*, 64 Wn. App. 528, 534, 827 P.2d 290 (1992) to argue that a sentencing court may not impose two exceptional sentences. In *McClure*, the court indicated that a sentencing judge must choose between the two types of exceptional sentences — a sentence outside the standard range and consecutive sentencing — based on the following statement in *State v. Batista*, 116 Wn.2d 777, 785-86, 808 P.2d 1141 (1991): " 'If a presumptive sentence is clearly too lenient, this problem could be remedied *either* by lengthening concurrent sentences, *or* by imposing consecutive sentences.' " *McClure*, 64 Wn. App. at 534.

However, when faced with the same issue in *State v. Smith*, 123 Wn.2d 51, 58, 864 P.2d 1371 (1993), the Supreme Court stated that neither *Batista* nor the SRA prohibits a sentencing court from imposing both types of exceptional sentences. The court emphasized a different statement in *Batista* which reflected the true holding of that opinion: " '[W]here multiple current offenses are concerned, *in addi-*

*ion to lengthening of sentences,* an exceptional sentence may also consist of imposition of consecutive sentences where concurrent sentencing is otherwise the standard.'" *Smith,* 123 Wn.2d at 58 (quoting *Batista,* 116 Wn.2d at 784). Hence, a sentencing court may impose both types of exceptional sentences simultaneously.[9]

## III

### VALID AGGRAVATING FACTORS

The next issue presented is whether the aggravating factors on which the trial court based the exceptional sentences are valid. Flake contends that the trial court identified only one valid aggravating factor (the severity of Teruya's injuries and their effect). The State maintains that the aggravating factors of Teruya's severe injuries and multiple victims support the exceptional sentences.

Seriousness and effect of Teruya's injuries. The trial court listed five reasons on which it relied to impose the two exceptional sentences. Flake initially argues that the first two reasons are the same aggravating factor. The State appears to have conceded that argument because it does not address it.

The first aggravating factor cited by the trial court is that many organs and parts of Teruya's body no longer function, and he will be permanently paralyzed. Finding of fact (a). The second aggravating factor is the extraordinary and irreversible effect of Teruya's injuries on him and his family, both socially and economically. Finding of fact (b). According to case law, the seriousness of a victim's injuries is a valid aggravating factor if "the conduct producing the harm, and the harm produced, were significantly more serious than what is typically involved in the crime." *State v. Warren,* 63 Wn. App. 477, 479, 820 P.2d 65 (1991) (citing, *inter alia, State v. Tunell,* 51 Wn. App. 274, 279, 753 P.2d 543, *review denied,* 110 Wn.2d 1036 (1988), *overruled on other grounds by State v. Batista,* 116 Wn.2d 777, 788, 808 P.2d 1141 (1991)), *review denied,* 118 Wn.2d 1030 (1992). That aggra-

---

[9]The parties also dispute whether more than one aggravating factor is required to impose two exceptional sentences. Because we conclude that there are three valid aggravating factors here, we need not address that dispute.

vating factor has been equated with the effect of a victim's injuries. For example, in *George* the defendants' first degree assault placed the victim in a semivegetative state. *George*, 67 Wn. App. at 223. While discussing the severity of the victim's injuries, the court concluded that the effect of the injuries was far more serious than the sort of injury necessary to support a conviction of first degree assault and, thus, supported the exceptional sentence imposed. *George*, 67 Wn. App. at 223.

Likewise in *Tunell*, the court equated the serious effects of the defendant's acts (severe sexual abuse of five children) with the "seriousness of [the victims'] injuries". *Tunell*, 51 Wn. App. at 279. The court upheld an exceptional sentence based on the serious physical and psychological effects on the children. *Tunell*, 51 Wn. App. at 279-80. Thus, in the context of aggravating factors, the seriousness of Teruya's injuries is the same thing as the effect of those injuries on Teruya and his family, and thus, findings of fact (a) and (b) amount to a single valid aggravating factor.

Multiple victims. Flake contends that neither his guilty plea nor the facts proved at the sentencing hearing support the trial court's conclusion that there were multiple victims in this case, and thus, reliance on that aggravating factor violated the real facts doctrine. The State argues that the real facts doctrine did not bar the court from considering that there were multiple victims because Flake's counsel failed to timely object to the admission of that evidence and never disputed that there were multiple victims.

■ Multiple victims may be used as an aggravating factor "when a defendant's conduct which forms the basis of the charge creates multiple victims and the State has not filed multiple charges." *State v. Smith*, 67 Wn. App. 81, 90, 834 P.2d 26 (1992), *modified on other grounds*, 123 Wn.2d 51, 864 P.2d 1371 (1993). The real facts doctrine is derived from RCW 9.94A.370(2), which states:

> In determining any sentence, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of

sentencing. Acknowledgement includes not objecting to infor-. mation stated in the presentence reports. Where the defendant disputes material facts, the court must either not consider the fact or grant an evidentiary hearing on the point. The facts shall be deemed proved at the hearing by a preponderance of the evidence. Facts that establish the elements of a more serious crime or additional crimes may not be used to go outside the presumptive sentence range [with some exceptions not applicable here].

The sources for the information that is admitted, acknowledged, or proved during trial or the sentencing hearing "are not limited to presentence reports or plea statements." *State v. Handley*, 115 Wn.2d 275, 286, 796 P.2d 1266 (1990).

█ Here, the trial court correctly concluded that the real facts doctrine did not preclude using the fact of multiple victims to support an exceptional sentence. Flake never disputed that there were three victims of the vehicular assault, and because he never disputed it, he effectively acknowledged that fact. *See Handley*, 115 Wn.2d at 286 (the sentencing court may rely on information that is acknowledged at the sentencing hearing, and that information need not be in the presentence reports or plea agreement); RCW 9.94A.370(2) ("[a]cknowledgement includes not objecting to information stated in the presentence reports").

Further, Teruya's attorney, Joseph Hunt, presented evidence during the sentencing hearing that there were two other victims of Flake's vehicular assault — Yoo-Mee Park and Junichi Komazaki. Under RCW 9.94A.110, the trial court properly heard Hunt's testimony.[10] Moreover, Flake's counsel did not object when Hunt presented that evidence to the court. It was only later in the sentencing hearing when asked to respond to the issue that Flake's counsel objected to

---

[10]RCW 9.94A.110 reads in pertinent part:

"Before imposing a sentence upon a defendant, the court shall conduct a sentencing hearing. . . . The court shall consider the presentence reports, if any, including any victim impact statement and criminal history, and allow arguments from the prosecutor, the defense counsel, the offender, the victim, the survivor of the victim, or a representative of the victim or survivor[.]"

While Teruya's victim impact statement did not mention the other two victims and, thus, does not in itself support a finding of multiple victims, that finding is clearly supported by Hunt's testimony.

the use of multiple victims as a basis for an exceptional sentence. Because the fact that there were three victims was both acknowledged and proved at the time of sentencing, the real facts doctrine was not violated, RCW 9.94A.370(2), and the trial court properly relied on the aggravating factor of multiple victims.

Driving without insurance. Driving without the required liability insurance is not a crime. It is prohibited by RCW 46.30.020(1)(a), but the failure to provide proof of insurance is categorized as a traffic infraction subject to monetary penalties or community service. RCW 46.30.020(1)(d). RCW 46.30 does not identify any criminal consequence for failing to possess liability insurance. Reliance on the fact that Flake was driving without insurance therefore is not reliance on an uncharged crime and, thus, is not prohibited by the real facts doctrine.

Driving without the mandated liability insurance does not make the vehicular assault itself more onerous or egregious than a typical vehicular assault. *Cf. State v. Oksoktaruk*, 70 Wn. App. 768, 775, 856 P.2d 1099 (1993) (defendant's vehicular assault was more onerous than the typical vehicular assault because his blood alcohol was more than twice the legal limit and his driving had been egregious). However, the lack of liability insurance makes the financial consequences of the assault significantly greater for the victim. The Legislature would not have considered that factor when it set the standard range for vehicular assault, and the victim's financial hardship from the offending driver's lack of liability insurance undoubtedly will exceed the financial consequences of a vehicular assault committed by an offender who has insurance coverage. For those reasons, we hold that Flake's act of driving without liability insurance is a valid aggravating factor to support an exceptional sentence because it was "sufficiently substantial and compelling to distinguish the crime in question from others in the same category." *State v. Grewe*, 117 Wn.2d 211, 216, 813 P.2d 1238 (1991).[11]

---

[11]We agree with Flake, however, that reliance on his driving without a license violated the real facts doctrine because driving while one's privilege to drive is

In sum, three valid aggravating factors support Flake's two exceptional sentences: the seriousness of Teruya's injuries, multiple victims, and driving without liability insurance.

## IV

### STATUTORY MAXIMUM SENTENCES

Finally, Flake argues that the trial court erred by imposing consecutive sentences because the total length of confinement exceeded the statutory maximum sentence for each conviction. He relies on *State v. Johnson*, 96 Wn.2d 926, 639 P.2d 1332 (1982) to argue that if his two convictions constitute the same criminal conduct, the trial court erred by imposing consecutive sentences because the total length of confinement (73 months) exceeded the statutory maximum sentence (5 years) for each conviction.

In general, the sentencing court "may not impose a sentence providing for a term of confinement . . . which exceeds the statutory maximum for the crime as provided in chapter 9A.20 RCW." RCW 9.94A.120(11). When a defendant is convicted of multiple crimes arising from a single act, there is no double jeopardy issue if the sentences for those crimes run concurrently with each other. *Johnson*, 96 Wn.2d at 932.

As discussed above, Flake's two convictions were not based on the same criminal act. Therefore, *Johnson* is inapposite. Further, the sentence in this case does not violate RCW 9.94A.120(11) because the individual sentences for each of Flake's two convictions (25 months and 48 months) do not exceed the 5-year statutory maximum for each crime. The present sentences are comparable to those imposed in *State v. Oxborrow*, 106 Wn.2d 525, 526, 723 P.2d 1123 (1986), *cert. denied*, 493 U.S. 942 (1989), for the crimes of first degree theft and violation of a cease and desist order involving the sale of securities. 106 Wn.2d at 533. The statutory maximum sentence for each of Oxborrow's two convictions was 10 years. The sentence for each crime was outside the

suspended or revoked is a gross misdemeanor. RCW 46.20.342(1). The trial court therefore erred by relying on that uncharged crime as an aggravating factor. RCW 9.94A.370(2).

standard range, and the sentences were to run consecutively for a total of 15 years. 106 Wn.2d at 528. On review, the Supreme Court affirmed the sentences and noted that Oxborrow could have been sentenced to consecutive 10-year terms for a total of 20 years. 106 Wn.2d at 535-36. Similarly, Flake could have been sentenced to a total of 10 years without violating RCW 9.94A.120(11).

The judgment and sentence are affirmed.

PEKELIS, C.J., and KENNEDY, J., concur.