[No. 20360-3-III.   Division Three.   April 4, 2002.]

THE STATE OF WASHINGTON, *Respondent*, v. BRIAN LEE
BENEFIEL, *Appellant*.

*Janet G. Gemberling,* for appellant.

*Steven J. Tucker, Prosecuting Attorney,* and *Kevin M. Korsmo* and *Andrew J. Metts III, Deputies,* for respondent.

SWEENEY, J. — The real facts doctrine prohibits trial courts from imposing a sentence based on facts that compose the elements of an additional, unproven crime, or facts that would elevate the degree of the charged crime. *State v. Wakefield,* 130 Wn.2d 464, 475-76, 925 P.2d 183 (1996). Here, Brian Benefiel was convicted of second degree assault after striking Brandon Smith in the face with a shotgun and accidentally shooting him in the hip. The trial court imposed an exceptional sentence upward based on the seriousness of Mr. Smith's injury. We hold that the serious nature of Mr. Smith's injury establishes neither the elements of an uncharged crime, nor facts that would elevate his conviction to first degree assault. The trial court did not then violate the real facts doctrine. Accordingly, we affirm.

## FACTS

Denine Shaw awakened Brandon Smith and told him that her ex-boyfriend, Nick Carter, and Brian Benefiel were coming over. Mr. Smith knew that Mr. Benefiel had earlier accused him of stealing some drugs. Mr. Benefiel had also threatened Mr. Smith's life over the alleged drug theft. Mr. Carter and Mr. Benefiel then arrived at Ms. Shaw's house.

It is disputed whether Mr. Benefiel arrived carrying a shotgun. It is undisputed, however, that Mr. Benefiel eventually had a shotgun and that he used it to strike Mr. Smith in the face. Mr. Smith then reached for the shotgun, a struggle ensued, and the shotgun fired—striking Mr. Smith in the upper right leg.

Mr. Benefiel was charged with first degree assault and first degree robbery. The matter proceeded to trial.

Dr. Scott Redman testified that the shotgun blast essentially destroyed Mr. Smith's right hip. Mr. Smith underwent surgery, a skin graft was performed, and a metal plate was installed. Dr. Redman labeled Mr. Smith's prognosis as guarded, with a 50 percent chance that he would require further surgery, including the possibility of a total hip replacement. Mr. Smith's injury is permanent, and he is unlikely to regain normal use of his hip.

The jury was instructed on first degree assault, second degree assault, and first degree burglary. Mr. Benefiel was convicted of second degree assault.

At sentencing, the trial judge imposed an exceptional sentence upward of 36 months. The judge based the exceptional sentence on the seriousness of Mr. Smith's injuries. Mr. Benefiel appeals only his exceptional sentence.

## DISCUSSION

■■ "A court may depart from the presumptive sentence range if the offense involves substantial and compelling circumstances." *State v. Hammond*, 121 Wn.2d 787,

794, 854 P.2d 637 (1993); RCW 9.94A.505(2).[1] We review the sentencing judge's reasons for an exceptional sentence under the clearly erroneous standard. *State v. Nordby*, 106 Wn.2d 514, 517-18, 723 P.2d 1117 (1986); RCW 9.94A.585-(4)(a). A reason for imposing an exceptional sentence is clearly erroneous if it is not supported by substantial evidence. *State v. Jeannotte*, 133 Wn.2d 847, 856, 947 P.2d 1192 (1997). We review the legal sufficiency of the reasons given as a matter of law. *Hammond*, 121 Wn.2d at 794; RCW 9.94A.585(4)(a).

Here, Mr. Benefiel does not challenge the factual aspect of the trial court's reasons, but only whether they are legally sufficient. Our review is therefore de novo. *State v. Cardenas*, 129 Wn.2d 1, 5-6, 914 P.2d 57 (1996).

■ The severity of the victim's injuries is a valid aggravating factor. *State v. Quiros*, 78 Wn. App. 134, 142, 896 P.2d 91 (1995); *State v. Flake*, 76 Wn. App. 174, 183, 883 P.2d 341 (1994). Mr. Benefiel does not allege that Mr. Smith's injuries are not severe. Rather, he argues that the trial court's reliance on the severity of Mr. Smith's injuries violated the real facts doctrine.

■ The real facts doctrine prohibits trial courts from relying on either (1) facts that compose the elements of an additional, unproven crime, or (2) facts that would elevate the degree of the charged crime. *Wakefield*, 130 Wn.2d at 475-76; *State v. Barnes*, 117 Wn.2d 701, 707, 818 P.2d 1088 (1991); *State v. Morreira*, 107 Wn. App. 450, 458, 27 P.3d 639 (2001); *State v. Tierney*, 74 Wn. App. 346, 351-52, 872 P.2d 1145 (1994).

■ Trial courts may, however, consider facts that are closely connected to the underlying, convicted-of crime when imposing an exceptional sentence. *Wakefield*, 130 Wn.2d at 477 (defendant's deliberate acts to seclude victim from his family went "hand in hand" with the defendant's reckless behavior); *Quiros*, 78 Wn. App. at 139-40 (facts

---

[1] In 2001 a major part of the Sentencing Reform Act of 1981, chapter 9.94A RCW, was recodified to new subsections. For the sake of discussion, we use these new subsections.

that defendant drove under the influence and in excess of 85 miles per hour on a residential street were properly examined by the trial court because they were "underlying facts and circumstances" of the vehicular assault); *Tierney*, 74 Wn. App. at 352-53 (defendant's threats to victim of arson were "closely connected to the underlying offense").

Under the additional crimes prohibition, courts have held that an exceptional sentence cannot be based on facts proving the elements of bail jumping when the underlying crime is indecent liberties. *Hammond*, 121 Wn.2d at 793-94. Likewise, facts showing the elements of tampering with a witness cannot be used to justify an exceptional sentence for child molestation. *State v. Henshaw*, 62 Wn. App. 135, 137-38, 813 P.2d 146 (1991). And the fact that a defendant perjures himself cannot be used to impose an exceptional sentence for delivery of a controlled substance. *State v. Houf*, 120 Wn.2d 327, 334, 841 P.2d 42 (1992).

Under the elevated degree prohibition, a court cannot base an exceptional sentence for second degree robbery on the defendant's infliction of bodily harm because that is an element which separates second degree robbery from first degree robbery. *State v. Sly*, 58 Wn. App. 740, 750, 794 P.2d 1316 (1990). Similarly, a trial court cannot justify an exceptional sentence for second degree assault on the defendant's intent to inflict bodily injury because intent is what separates second degree assault from first degree assault. *Morreira*, 107 Wn. App. at 460.

■ Here, the severity of Mr. Smith's injuries do not demonstrate the elements of an additional, uncharged crime. Rather, Mr. Benefiel argues that the severity of Mr. Smith's injuries elevates second degree assault to first degree assault. The State responds that the severity of Mr. Smith's injuries was a part of the underlying crime (second degree assault) and, therefore, properly considered by the trial court.

The jury was instructed that second degree assault could occur in either of two ways: (1) if Mr. Benefiel "intentionally assaulted [Mr.] Smith and thereby recklessly inflicted sub-

stantial bodily harm," or (2) if Mr. Benefiel "assaulted [Mr.] Smith with a deadly weapon." Report of Proceedings (RP) at 206. The instruction for first degree assault required the jury to find that Mr. Benefiel acted "with intent to inflict great bodily harm." RP at 204. Thus the differences between the two crimes are the intent to inflict great bodily harm and the level of bodily injury. RCW 9A.36.011, .021.

Using intent to inflict great bodily harm to impose an exceptional sentence for second degree assault violates the real facts doctrine because intent is the very element that separates second degree assault from first degree assault. *Morreira*, 107 Wn. App. at 460. Here, however, the trial court did not rely on intent to justify the sentence. Rather, the trial court based the exceptional sentence solely on the level of the victim's injuries. The trial court stated in its findings of fact:

> The injury sustained as a result of the defendant's conduct was far more serious than required to support a conviction for Assault in the Second Degree. . . .
>
> . . . .
>
> While the jury may have found the shooting to be accidental, the defendant created the potential for the outcome by threatening the victim with a loaded sawed off shotgun and threatening to kill the victim.

Clerk's Papers at 22-23.

As the State argues, the jury apparently believed Mr. Benefiel that the shooting was accidental. Had it been intentional, the jury would have convicted him of first degree assault. The fact that the shooting was accidental does not somehow remove it from the underlying facts surrounding Mr. Benefiel's commission of second degree assault. The two events were intertwined. Indeed, Mr. Benefiel described the shooting as follows:

> And I turned around, and there's a gauge sitting in the corner, a long-barreled shotgun. I grabbed it, turned around, and I hit him with it. And he grabbed it. He grabbed onto it, and, boom, it just went off. I was trying not to let him get it, you know.

RP at 168. Mr. Benefiel's own description of the event was an intentional assault (striking with the gun) that recklessly caused severe injury to Mr. Smith (when the gun fired).

The serious nature of Mr. Smith's injuries cannot, alone, elevate the crime to first degree assault because of the lack of intent. RCW 9A.36.011(1) (first degree assault requires that the defendant act with intent to inflict great bodily harm). In other words, injuries that are *recklessly* inflicted (regardless of how severe) can never establish first degree assault because first degree assault requires an *intent* to inflict great bodily harm. RCW 9A.36.011(1).

The trial court justified the exceptional sentence with the severity of Mr. Smith's injuries—a valid aggravating factor. *Quiros*, 78 Wn. App. at 142; *Flake*, 76 Wn. App. at 183. The trial court did not rely on facts that demonstrate the elements of an additional uncharged crime. *See Hammond*, 121 Wn.2d at 794; *Houf*, 120 Wn.2d at 334; *Henshaw*, 62 Wn. App. at 137-38. Nor did the trial court rely on an element of an elevated degree crime. *Morreira*, 107 Wn. App. at 460; *Sly*, 58 Wn. App. at 750.

■ Mr. Benefiel inflicted injuries more severe than those found in the typical second degree assault conviction.[2] The trial court did not then err by imposing an exceptional sentence. *Quiros*, 78 Wn. App. at 142; *Flake*, 76 Wn. App. at 183.

We affirm.

SCHULTHEIS and KURTZ, JJ., concur.

Reconsideration denied May 16, 2002.

Review denied at 147 Wn.2d 1014 (2002).

---

[2] Substantial bodily harm, the harm included in second degree assault, is defined as "bodily injury which involves a *temporary* but substantial disfigurement, or which causes a *temporary* but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part." RCW 9A.04.110(4)(b) (emphasis added). Mr. Smith's injuries, on the other hand, are permanent.