FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 NOV 18 AM 10: 54



# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 68809-0-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JORELL AVERY HICKS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: November 18, 2013 |

SPEARMAN, A.C.J. — A jury convicted Jorell Hicks of several crimes based on evidence of a drug-related robbery and shooting. Hicks claims the trial court violated double jeopardy principles by entering convictions for first degree robbery and drive-by shooting because the underlying conduct was also the basis for his first degree assault conviction involving the same victims. Hicks also contends he was denied the effective representation of counsel at sentencing because counsel failed to argue that his robbery and assault convictions encompassed the same criminal conduct. We reject his arguments, and affirm.

## FACTS

Coletin Kittleson was, at times, a drug supplier to Erin Gunder. In August 2011, in need of money, Kittleson and his friend Jorell Hicks devised a plan to rob Gunder of drugs and resell the drugs for cash. Kittleson arranged for Gunder to procure two

ounces of heroin and sell it to him. Another friend of Kittleson's, Devan Bermodes, agreed to drive Kittleson and Hicks to meet Gunder.

Upon arriving at the Walmart parking lot where Kittleson had arranged to meet Gunder, Kittleson noticed police cars in the vicinity. Kittleson contacted Gunder and told her to meet him at the Old Spaghetti Factory parking lot instead. Bermodes parked in a parking lot below the Old Spaghetti Factory parking lot with a staircase connecting the two lots. Kittleson and Hicks walked up the stairs together and Kittleson pointed out Gunder to Hicks. Kittleson went back to the car to wait.

Gunder was out of the car, facing the trunk, when Hicks approached her from behind and said "'Give me your shit.'" Verbatim Report of Proceedings (VRP) at 31. Hicks pointed a gun at Gunder, and she gave him the drugs. When Hicks was not satisfied and continued to demand that she give him everything she had, Gunder handed Hicks her wallet and purse. Hicks then pointed the gun at Edward Straw, Gunder's boyfriend, who was sitting in the front passenger's seat. Straw said he had nothing to give. Hicks ordered Gunder to get in the car. He closed the car door after her and took off running.

Gunder immediately started the car, and as she pulled out of the parking lot, she saw a Cadillac starting to pull out of the lower parking lot. Since it was the only car in the parking lot below and Hicks ran in that direction, Gunder assumed the robber must be in that car. She decided to follow it. Both vehicles pulled out onto the street, and Gunder got behind the Cadillac and followed it while Straw spoke to a 911 dispatch operator. Gunder was able to see three people in the car: the person who robbed her

sitting in the front passenger's seat, the driver, who appeared to be Hispanic and had a shaved head, and a white male in the back seat.

The group in the Cadillac realized Gunder was following them and tried to elude her by making several turns. When Gunder continued to follow, Hicks leaned his upper body out of the window, pointed the gun at Gunder's car, and fired two shots. One bullet struck the hood of the car on the passenger's side. Gunder stopped the car and flagged down a passing police officer.[1]

A short time later, police officers stopped Bermodes and Kittleson in the Cadillac described by Gunder and Straw. Gunder's wallet was in the car. Gunder and Straw identified Bermodes as the driver and Kittleson as the back seat passenger. Police arrested Hicks at his residence. In the residence, the police recovered a .40 caliber firearm, a hoodie, a bandana, Gunder's purse, a prescription bottle in Gunder's name, and a package containing nearly an ounce of heroin, in addition to some other drugs.[2] Hicks's right hand tested positive for gunpowder residue.

The State charged Hicks with five counts: first degree assault, first degree robbery, unlawful possession of a firearm, drive-by shooting, and possession of a controlled substance with intent to deliver. With respect to three counts: assault, robbery, and possession with intent to deliver drugs, the State alleged that Hicks was armed with a firearm at the time he committed the crimes.

---

[1] Two .40 caliber shell casings were recovered from the area where Gunder stopped.

[2] Kittleson testified that he threw his share of the stolen drugs out the window. A second package was never recovered.

3

Kittleson and Bermodes entered guilty pleas and testified at Hicks's trial.[3] Hicks also testified and denied that he had anything to do with the robbery and shooting. Hicks said that on the day in question, he helped Kittleson move out of his apartment in the afternoon and then Kittleson showed up at his house later in the evening. The jury convicted Hicks as charged.

At sentencing, Hicks's counsel argued that the drive-by shooting and assault counts encompassed the same criminal conduct. The trial court agreed and counted those crimes as a single offense for purposes of calculating Hicks's offender score on the assault count. The court imposed standard range concurrent sentences on four of the five counts plus three firearm enhancements.[4]

<u>Double Jeopardy</u>

Hicks challenges his convictions for robbery and drive by-shooting on double jeopardy grounds.

Both the United States and Washington State constitutions protect persons from being twice put in jeopardy for the same offense. <u>State v. Turner</u>, 169 Wn.2d 448, 454, 238 P.3d 461 (2010); U.S. CONST. AMEND. V; CONST. ART. I, § 9. This includes, "being (1) prosecuted a second time for the same offense after acquittal, (2) prosecuted a second time for the same offense after conviction, and (3) punished multiple times for the same offense." <u>State v. Linton</u>, 156 Wn.2d 777, 783, 132 P.3d 127 (2006) (citing <u>State v.</u>

---

[3] Kittleson pleaded guilty to second degree robbery with a firearm enhancement and Bermodes pleaded guilty to second degree robbery.

[4] The sentencing court did not impose a sentence on the drive-by shooting conviction, presumably because of the finding of same criminal conduct. Considering that the State did not object below and imposition of a separate concurrent sentence on this count would not change the total confinement, the State does not assert a cross appeal.

4

Graham, 153 Wn.2d 400, 404, 103 P.3d 1238 (2005)). However, the State may bring multiple charges arising from the same criminal conduct in a single proceeding without offending double jeopardy. State v. Freeman, 153 Wn.2d 765, 770, 108 P.3d 753 (2005). Our supreme court has consistently rejected the notion that "offenses committed during a 'single transaction' are necessarily the 'same offense'" for purposes of double jeopardy. State v. Vladovic, 99 Wn.2d 413, 423, 662 P.2d 853 (1983). Because double jeopardy is a question of law, our review is de novo. Freeman, 153 Wn.2d at 770.

Our courts employ a three-part framework for double jeopardy analysis. Freeman, 153 Wn.2d at 771-73. First, if there is clear express or implicit legislative intent to punish the crimes separately, then we look no further. Freeman, 153 Wn.2d at 771-72. If the legislative intent is unclear, we turn to the "same evidence" test which asks if the crimes are the same in law and in fact.[5] State v. Calle, 125 Wn.2d 769, 777-78, 888 P.2d 155 (1995). Third, if applicable, the merger doctrine may help determine legislative intent. Vladovic, 99 Wn.2d at 419. Even if the two offenses appear to be the same, when each one has an independent purpose or effect, then the two offenses may be punished separately. Freeman, 153 Wn.2d at 773.

Hicks makes no attempt to establish that the offenses of first degree assault, first degree robbery, and drive-by shooting are legally identical. Instead, Hicks asserts that the offenses are the same in fact because his single act of firing a gun at Gunder and Straw was an element of all three offenses.

---

[5] Washington's "same evidence" test is sometimes referred to as the "same elements" test or "the Blockburger test." Freeman, 153 Wn.2d at 772 (citing Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

The same evidence test considers "whether each provision requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). "If each crime contains an element that the other does not, we presume that the crimes are not the same offense for double jeopardy purposes." Freeman, 153 Wn.2d at 772. Offenses are not the same in fact and law if there is an element in each offense which is not included in the other, and proof of one offense would not necessarily also prove the other. Calle, 125 Wn.2d at 777; Vladovic, 99 Wn.2d at 423. We view the elements "as charged and proved," not in the abstract. Freeman, 153 Wn.2d at 777.

As charged in this case, drive-by shooting, first degree assault, and first degree robbery each contain a statutory element that is absent from the others. See RCW 9A.36.011(1); RCW 9A.36.045; RCW 9A.56.190, RCW 9A.56.200(1)(a)(i). The offenses are not the same in law and Hicks does not argue otherwise.

However, comparison of the statutory elements at an abstract level does not end the analysis. In re Pers. Restraint of Orange, 152 Wn.2d 795, 818, 100 P.3d 291 (2004); State v. Nysta, 168 Wn. App. 30, 46-47, 275 P.3d 1162 (2012), review denied, 177 Wn.2d 1008 (2013). We must look at the statutory elements and the facts used to prove those elements to determine whether each offense required "proof of a fact which the other d[id] not." Blockburger, 284 U.S. at 304.

As the offenses were charged and proved in this case, evidence that Hicks fired a gun was required to prove both his convictions for drive-by shooting and first degree assault. But each offense also required proof of a fact that the other did not. With respect to first degree assault, the State was required to prove that Hicks's shooting

was directed at Gunder and Straw with the intent to inflict great bodily harm. To prove drive-by shooting, the State was required to prove that Hicks discharged a weapon from a vehicle or in proximity to a vehicle in a manner that created a substantial risk of death or serious injury to another person.

As to the robbery, Hicks points out that the jury could have relied on the evidence that he fired a gun at Gunder's car, and concluded that by doing so, he not only assaulted the occupants, but also satisfied one of the elements of robbery by using force to retain their property. But, to prove robbery, the State was also required to demonstrate that Hicks took property from Gunder's person against her will by using force or threatening force, violence, or injury.

In re Pers. Restraint of Orange, 152 Wn.2d at 814-20, is instructive. In that case, the State charged Orange with both attempted murder and first degree assault for the single shot that hit a single victim. In the charging document, the State alleged that Orange committed attempted first degree murder when he acted with premeditated intent to cause the death of another and "did attempt to cause the death of [M.W.]. In re Orange, 152 Wn.2d at 814. The State alleged that Orange committed first degree assault when he "'at the same time as the [attempted murder], then and there, with intent to inflict great bodily harm upon another person did intentionally assault [M.W.] with a firearm.'" In re Orange, 152 Wn.2d at 815 (quoting Opening Br. of Pet'r, App. A (Second Am. Information) at 1-2). Our supreme court held that in order to determine whether an attempt crime is the same offense as another crime, the court must substitute the generic element of a "'substantial step'" for the specific conduct relied upon to prove the substantial step. Orange, 152 Wn.2d at 818. Because the

7

substantial step toward murder, shooting the victim, was the same evidence that proved the assault, and the evidence required to prove attempted murder was sufficient to prove first degree assault, the crimes were the same offense. Orange, 152 Wn.2d at 820.

Unlike the circumstances in Orange, this is not a case where evidence of a single act was required to prove multiple offenses and was the sole available evidence to prove those charges. The evidence that Hicks fired one bullet at Gunder's car was all that was required to prove first degree assault. This evidence was available, but not required, to support either of the other two convictions. The crime of drive-by shooting was also established by evidence that Hicks fired a second bullet. The crime of robbery was established by the evidence that Hicks robbed Gunder at gunpoint, threatening the use of force by displaying a firearm, and deploying that threat of force for the purpose of obtaining her property and preventing any resistance.

In sum, first degree robbery, first degree assault, and drive-by shooting were not the same offenses. It follows that the three convictions did not violate the prohibition against double jeopardy.

## Same Criminal Conduct

Hicks argues that his trial counsel rendered ineffective assistance because he failed to argue at sentencing that the robbery and assault counts encompassed the same criminal conduct.[6] To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of

---

[6] A defendant may raise the issue of same criminal conduct for the first time on appeal in the context of an ineffective assistance of counsel claim, even if he did not raise the argument in the trial court. See State v. Saunders, 120 Wn. App. 800, 825, 86 P.3d 232 (2004).

reasonableness based on consideration of all the circumstances, and that the deficient performance caused prejudice. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). If one of the two prongs of the test is absent, we need not inquire further. Strickland, 466 U.S. at 697; State v. Foster, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

We presume effective representation and the defendant bears the burden of showing the absence of legitimate strategic or tactical reasons for the challenged conduct. State v. McFarland, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995). To show prejudice, the defendant must prove that, but for the deficient performance, there is a reasonable probability that the outcome would have been different. In re Pers. Restraint of Pirtle, 136 Wn.2d 467, 487, 965 P.2d 593 (1998). In this context, Hicks must show that it was objectively unreasonable not to raise a same criminal conduct argument, and that there is a strong probability such an argument would have been successful had it been raised.

Multiple current offenses are presumptively counted separately in determining a defendant's offender score unless the trial court finds that current offenses encompass the "same criminal conduct." RCW 9.94A.589(1)(a). Crimes constitute the "same criminal conduct" when they "require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a). The legislature intended the phrase "same criminal conduct" to be construed narrowly, State v. Flake, 76 Wn. App. 174, 180, 883 P.2d 341 (1994); if any one of the factors is missing, the multiple offenses do not encompass the same criminal conduct. State v. Lessley, 118 Wn.2d 773, 778, 827 P.2d 996 (1992). Moreover, because a finding by the

sentencing court of same criminal conduct always favors the defendant, "it is the defendant who must establish [that] the crimes constitute the same criminal conduct." State v. Graciano, 176 Wn.2d 531, 539, 295 P.3d 219, 223 (2013).

Hicks cannot establish a likelihood that counsel's argument would have prevailed. It is likely the court would have concluded that the assault occurred after the robbery was complete and some blocks away from the parking lot where Hicks took property from Gunder at gunpoint. There was also evidence that the occupants of the Cadillac noticed Gunder was following them and had some discussion about what to do. This evidence suggests that after robbing Gunder, Hicks had the opportunity to reflect and form a new intent to commit assault. See State v. Wilson, 136 Wn. App. 596, 615, 150 P.3d 144 (2007) (where defendant had time to complete the assault and form a new intent to threaten the victim, assault and felony harassment had different objective intents). Also, in assaulting Gunder and Straw with a firearm, Hicks had the objective intent of inflicting physical injury or fear of injury. When he earlier pointed a gun at them and demanded their property, he manifested a different intent—to deprive them of personal property by force.

Defense counsel had argued successfully that Hicks's convictions for drive-by shooting and assault were the same criminal conduct for scoring purposes. Considering that these offenses took place at the same time and place, it was reasonable for counsel to conclude that this was Hicks's strongest argument and focus on the issue most likely to benefit his client. Although Hicks claims there was no legitimate tactical reason for counsel to refrain from making a second same criminal conduct argument, he overlooks the possibility it could have detracted from his better

10

argument. Because Hicks fails to meet his burden to show that counsel was deficient or the result of sentencing probably would have been different had counsel raised the argument, the claim of ineffective assistance of counsel fails.

We affirm.

_Spearman, A.C.J._

WE CONCUR:

_Schindler, J_      _Appelwick, J._