[Nos. 26208-4-I; 26236-0-I. Division One. August 24, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHNNIE J. GEORGE IV, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. SAMUEL A. MIDDLETON, *Appellant.*

*Mary Jane Ferguson* and *Eric Broman* of *Washington Appellate Defender Association,* for appellants.

*Michael E. Rickert, Prosecuting Attorney,* and *K. Garl Long, Deputy,* for respondent.

GROSSE, C.J. — Johnnie J. George and Samuel A. Middleton appeal their exceptional sentences imposed for crimes against a 77-year-old woman during the course of a robbery they committed together. Because the crimes were committed during the course of the same robbery and therefore involve similar circumstances, and because the trial court relied on much the same reasons in setting the exceptional sentences for both, we discuss the propriety of the reasons common to both cases in one opinion. Those issues raised by only one or the other defendant are discussed separately herein.

In late October 1989, Middleton, George, and two others decided to rob the house of a 77-year-old woman. Between October 31, 1989, and November 3, 1989, Middleton and the

others drove to the victim's home on five occasions, intending to rob her. On November 3, 1989, Middleton and George entered the home through an unlocked back door. When they encountered the victim, George dragged her into a room near the bathroom. He then hit her in the face approximately three times with his fists before holding her down for approximately 15 minutes while Middleton attempted to remove a safe from the house. Before they left, Middleton beat the victim in the head five or six times with the stock of a .22 rifle, while George hit the victim once with his fist. Middleton used so much force in striking her that he broke the rifle. Her skull was fractured and she suffered permanent brain damage.

George then told Middleton to leave the room. He then removed the victim's clothing and raped her. During that time, Middleton put the safe in the trunk of the car, returned to the victim's residence, and told George they were ready to go. When George entered the car, the socks he was using as gloves were stained with blood. The victim was left lying naked on the bathroom floor and was not found until the next morning. At no time did Middleton or George attempt to summon aid for her. Today, the victim resides in a nursing home where she remains in a semivegetative state. She sustained permanent brain damage and is unable to engage in meaningful communication with others.

Middleton was found guilty of first degree robbery and assault; George was found guilty of those crimes and the additional crime of rape. The trial court imposed an exceptional sentence of 480 months on Middleton, along with restitution and costs. As grounds justifying that sentence, the trial court considered the victim's vulnerability, the cruelty and gratuitousness of the injury and its effects, his parole status at the time of the crimes, and the potential threat he poses to the community.[1] The trial court sentenced

---

[1]The court also stated in its findings that Middleton lacked remorse for his actions, and that he had planned the crime. We do not reach the question whether these factors would warrant the imposition of an exceptional sentence in this case because we hold that the other factors on which the trial court relied support an exceptional sentence of the length imposed here.

George to 420 months based on the same factors, with the exception of parole status.

Middleton and George contend that the trial court improperly considered as aggravating a number of circumstances attending the crimes, and that their sentences are excessive.[2] Additionally, Middleton argues the trial court erred in imposing costs and that his right to equal protection of the law was violated because George, who committed the additional crime of rape, received a lesser sentence.

■ Review of an exceptional sentence is governed by RCW 9.94A.210(4), and involves three steps. First, we review the reasons given to support the exceptional sentence according to the "clearly erroneous" standard to determine if those reasons are supported by the record; second, we determine as a matter of law whether those reasons are "substantial and compelling", thus justifying departure from the presumptive range; and third, we determine, under a reasonable person standard, whether the trial court abused its discretion by imposing a sentence clearly excessive in leniency or severity. *State v. Gutierrez*, 58 Wn. App. 70, 791 P.2d 275 (1990).

### VULNERABILITY OF THE VICTIM

■ Middleton and George concede the particular vulnerability of the victim. The Sentencing Reform Act of 1981 (SRA) explicitly provides that the trial court may consider that "[t]he defendant knew or should have known that the victim of the current offense was particularly vulnerable or incapable of resistance due to . . . advanced age". RCW 9.94A.390(2)(b). Indeed, the fact that the victim was particularly vulnerable due to advanced age may alone, as a matter of law, be used to justify the imposition of an exceptional

---

[2]George argues for the first time on appeal that the trial court erred in calculating his offender score because the assault and robbery on the one hand, and the assault and rape on the other, constitute the same criminal conduct for sentencing purposes. An appellate court will generally refuse to review claims of error not brought to the attention of the trial court. *See* RAP 2.5. We are not inclined to depart from that principle here. Were we to do so, the imposition of an exceptional sentence so amply supported in the record would render the question academic.

sentence. *State v. Clinton*, 48 Wn. App. 671, 676, 741 P.2d 52 (1987), *cited in State v. Vandervlugt*, 56 Wn. App. 517, 523, 784 P.2d 546 (1990).

## CRUELTY/MULTIPLE INJURIES/GRATUITOUSNESS OF THE VIOLENCE

Middleton and George assert that the trial court's finding of deliberate cruelty does not support the imposition of an exceptional sentence in this case. They argue that the intentional infliction of great bodily harm is inherent in first degree assault under RCW 9A.36.011(1)(c).

■ "Deliberate cruelty" has been defined as "gratuitous violence, or other conduct which inflicts physical, psychological or emotional pain as an end in itself." *State v. Strauss*, 54 Wn. App. 408, 418, 773 P.2d 898 (1989). The conduct must be violent, and atypical of the crime at issue. *State v. Payne*, 45 Wn. App. 528, 531-32, 726 P.2d 997 (1986); *see State v. Dunaway*, 109 Wn.2d 207, 218-19, 743 P.2d 1237, 749 P.2d 160 (1987). *See also State v. Delarosa-Flores*, 59 Wn. App. 514, 518, 799 P.2d 736 (1990), *review denied*, 116 Wn.2d 1010 (1991). In the instant case, it is not the initial blow, but the gratuitous repetition of the blows, primarily delivered by Middleton and made possible by George, that supports a finding of cruelty. The same acts would support an exceptional sentence based on the infliction of multiple injuries, or on the gratuitousness of the violence. *See Dunaway*, 109 Wn.2d at 219.

## SEVERITY OF THE INJURY

■ Middleton and George also contend that the trial court erred in resting their exceptional sentences on the severity of the injury sustained by the victim. The seriousness of a victim's injuries cannot be used to enhance a defendant's sentence if that factor was considered in defining the crime itself. *State v. Tunell*, 51 Wn. App. 274, 279, 753 P.2d 543 (citing *State v. Weaver*, 46 Wn. App. 35, 42, 729 P.2d 64 (1986), *review denied*, 107 Wn.2d 1031 (1987)), *review denied*, 110 Wn.2d 1036 (1988). However, "the effects [of an offense] on the victim may be used to justify an exceptional

sentence if they are significantly more serious than in the usual case." *State v. Tunell*, 51 Wn. App. at 279 (citing *State v. Ratliff*, 46 Wn. App. 466, 469-70, 731 P.2d 1114 (1987)). Middleton and George pleaded guilty to assault in the first degree. To have been convicted of that offense, they must have intentionally inflicted "great bodily harm" upon the victim. RCW 9A.36.011(1)(c). "Great bodily harm" is defined as

> bodily injury which creates a probability of death, or which causes significant serious permanent disfigurement, or which causes a significant permanent loss or impairment of the function of any bodily part or organ[.]

RCW 9A.04.110(4)(c).

We reject the notion, advanced by both defendants, that the harm inflicted was not far greater than necessary to establish the crime. Under the statutory definition, loss of a foot, for example, would qualify as great bodily injury. Here, the assault was such as to relegate the victim to a semi-vegetative state, an injury far more serious than that necessary to qualify as first degree assault.[3] The trial court therefore did not err in considering the severity of the victim's injuries.

### THREAT TO THE COMMUNITY

■■ Middleton and George argue that it was error for the trial court to base their exceptional sentences on the conclusion that they pose a threat to the community. The Washington Supreme Court has recently held that it is

---

[3]We note that Middleton's and George's position arguably finds support in *State v. Nordby*, 106 Wn.2d 514, 723 P.2d 1117 (1986), in which the court held that the seriousness of the victim's injuries could not be considered in imposing an exceptional sentence for vehicular assault. In *Nordby*, the victim suffered two severely broken legs and a broken arm, and later lapsed into a coma for several days. During the incident, she had been in extreme pain which was expected to persist for some time, if not permanently. The court declined to consider the severity of the injuries an aggravating factor because "serious bodily injury" is necessary to establish vehicular assault. *Nordby*, 106 Wn.2d at 519. The instant case is distinguishable from *Nordby* in that seriousness of the injuries there was not atypical of a person who has been struck by an automobile, whereas here, the seriousness and permanence of the injuries resulted from the deliberate and gratuitous violence of the assault.

improper to rely on future dangerousness as an aggravating factor in cases involving nonsexual offenses. *State v. Barnes*, 117 Wn.2d 701, 818 P.2d 1088 (1991). Because Middleton did not commit a sexual offense, it was indeed error for the trial court to consider this factor in setting the sentence. With respect to George, who committed the sexual offense of rape, a finding of future dangerousness requires *both* a history of similar criminal acts *and* lack of amenability to treatment. *State v. Pryor*, 115 Wn.2d 445, 453, 799 P.2d 244 (1990). "At the minimum the trial court must have before it, in addition to a history of similar acts of sexual deviancy, the opinion of a mental health professional that the defendant would likely not be amenable to treatment." *Pryor*, 115 Wn.2d at 455. The record in this case fails on both counts; it neither indicates a history of similar acts, nor contains an evaluation by a mental health professional. The trial court therefore erred in considering future dangerousness an aggravating factor as to both Middleton and George.

■ Middleton makes three additional assignments of error distinct from those of George; only one has potential merit. First, he contends that the trial court erred in considering his parole status and history while on parole at the time of sentencing. The trial court's findings make it impossible to determine whether it focused on the commission of *additional crimes* while on parole, or on Middleton's *status* as a parolee, an aggravating factor. The former would be prohibited under RCW 9.94A.370(2). That statutory provision provides in pertinent part that facts that establish the elements of an additional crime may not be used to deviate from the presumptive sentence range, subject to two exceptions neither of which applies here. Parole *status* however may be considered an aggravating factor in the proper circumstance. The fact that additional crimes are committed while on parole indicates a greater disregard for the law than otherwise would be the case. *See State v. Smith*, 58 Wn. App. 621, 627, 794 P.2d 541 (1990) (not excluding parole status as a basis for imposing an exceptional sentence), *rev'd*

*on other grounds sub nom. State v. Barnes*, 117 Wn.2d 701, 818 P.2d 1088 (1991).

■ Second, Middleton argues that the trial court erred in imposing upon him financial obligations in the amount of $70 as prosecution costs and $100 as a "mandatory penalty assessment". In the case of *State v. Eisenman*, 62 Wn. App. 640, 810 P.2d 55, 817 P.2d 867 (1991), this court held that the trial court need not enter formal findings establishing the defendant's ability to pay court-imposed fees or costs when their imposition is minimal and does not infringe on the right to counsel. *See also State v. Curry*, 118 Wn.2d 911, 916, 829 P.2d 166 (1992). Because a $100 victim penalty assessment is minimal, *see State v. Suttle*, 61 Wn. App. 703, 812 P.2d 119 (1991), and Middleton's right to counsel was not infringed, the trial court committed no reversible error. Of course should Middleton truly find himself unable to pay, he will not be subject to incarceration. *Suttle*, 61 Wn. App. at 715 (citing *State v. Barklind*, 87 Wn.2d 814, 819-20, 557 P.2d 314 (1976)).

■ Third, Middleton argues that the trial court violated his right to equal protection of the law under the federal and state constitutions, by sentencing him to a 40-year sentence when George, who committed the additional crime of rape, received only a 35-year sentence.

> [I]f a defendant can establish that he or she is similarly situated with another defendant by virtue of near identical participation in the same set of criminal circumstances, then the defendant will have established a class of which he or she is a member. Only after membership in such a class is established will equal protection scrutiny be invoked. Then, only if there is *no rational basis* for the differentiation among the various class members will a reviewing court find an equal protection violation.

(Italics ours.) *State v. Handley*, 115 Wn.2d 275, 290, 796 P.2d 1266 (1990).

Middleton argues that for the purposes of the robbery and assault George and he are similarly situated. Even assuming arguendo that is correct, the trial court explained itself as follows:

> I gave your co-defendant [George] 35 years in the penitentiary for his acts, and he was a first offender. You stand here convicted as a multiple offender, your crimes escalating both in nature, character and severity over a period of time.

Because *Handley* sets forth a highly deferential test, and because the trial court's reasons posit a rational basis for the disparity, we decline to reverse the trial court on this basis.

### INADEQUACY OF THE PRESUMPTIVE SENTENCE RANGE

Middleton and George contend that the presumptive sentence range already accounts for the circumstances of their crimes and that it was therefore improper for the trial court to deem the range inadequate. RCW 9.94A.390(2)(g)[4] permits the trial court to impose an exceptional sentence if:

> The operation of the multiple offense policy of RCW 9.94A-.400 results in a presumptive sentence that is clearly too lenient in light of the purpose of this chapter, as expressed in RCW 9.94A.010.

██ The trial court may properly deem the presumptive sentence range inadequate where there is some extraordinarily serious harm or culpability resulting from multiple offenses which would not otherwise be reflected in the standard range. *State v. Fisher*, 108 Wn.2d 419, 428, 739 P.2d 683 (1987); *see also State v. Batista*, 116 Wn.2d 777, 788, 808 P.2d 1141 (1991). In this case, both extraordinarily serious harm and culpability are present. The trial court therefore did not err in considering the inadequacy of the standard range.

Middleton and George argue that their sentences are excessive. Middleton was sentenced to 480 months. Given his offender scores and the seriousness levels of the crimes at issue, the presumptive sentence range for first degree robbery is 81 to 99 months (the maximum sentence is life/$50,000); for first degree assault, 100 to 133 months (the maximum sentence is life/$50,000). George was sentenced to 420 months. Given his offender scores and the serious-

---

[4]Formerly RCW 9.94A.390(2)(f). *See* Laws of 1990, ch. 3, § 603.

ness levels of his offenses, the presumptive sentence range for first degree robbery is 75 to 92 months (the maximum sentence is life/$50,000); for first degree assault, 100 to 133 months (the maximum is life/$50,000); for first degree rape, 101 to 126 months (the maximum is life/$50,000).

 The length of an exceptional sentence is reviewed under an abuse of discretion standard. *State v. Pryor*, 56 Wn. App. 107, 118, 782 P.2d 1076 (1989) (citing *State v. Oxborrow*, 106 Wn.2d 525, 530, 723 P.2d 1123 (1986)), *aff'd*, 115 Wn.2d 445, 779 P.2d 244 (1990). On review, the record must reflect the reasons for the particular manner in which the discretion is exercised. *Pryor*, 56 Wn. App. at 118. The term of the exceptional sentence must have "some tenable basis in the record". *Pryor*, 56 Wn. App. at 123. " '[T]he length of an exceptional sentence cannot come out of thin air.' " *Pryor*, 56 Wn. App. at 123 (quoting *State v. Wood*, 42 Wn. App. 78, 84, 709 P.2d 1209 (1985), *review denied*, 105 Wn.2d 1010 (1986)). It can hardly be said here that the record fails to reflect the reasons for the sentences imposed. We note factors that may not in themselves be sufficient to justify the imposition of an exceptional sentence may be considered by the sentencing judge in determining the length of the sentence, provided those reasons are related to the defendant's culpability. The exceptional sentences of Middleton and George are warranted by the presence of numerous aggravating circumstances that are supported in the record, at least one of which (vulnerability due to age) would independently support the imposition of an exceptional sentence here. *See State v. Vandervlugt, supra.*

The Washington Supreme Court has admonished that "[t]he maximum sentence is to be imposed for only the 'worst case' scenario when the 'circumstances of the crime distinguish it from other crimes of the same statutory category.' " *State v. Pryor*, 56 Wn. App. at 119 (quoting *State v. Woody*, 48 Wn. App. 772, 778, 742 P.2d 133 (1987), *review denied*, 110 Wn.2d 1006 (1988)); *State v. Armstrong*, 106 Wn.2d 547, 555, 723 P.2d 1111 (1986). The brutality of the assault perpetrated on an elderly, defenseless victim certainly qualifies

the crimes described here as the "worst case" of robbery, assault, and rape.

"Generally, remand is necessary when the trial court places significant weight on an inappropriate factor, or where some factors are inappropriate and the exceptional sentence significantly deviates from the standard range." *Pryor*, 115 Wn.2d at 456 (citing *State v. Fisher*, 108 Wn.2d at 430 n.7). Remand is unnecessary if we are confident that the trial court would have imposed the same sentence even without considering the improper factor. *See State v. Barnes*, 117 Wn.2d at 712. Because we are confident that the trial court would have imposed the same sentence even absent the impermissibly considered factor(s), we affirm the sentence of the trial court.

SCHOLFIELD and AGID, JJ., concur.

Review denied at 120 Wn.2d 1023 (1993).