[No. 27775-1-II.   Division Two.   September 20, 2002.]

THE STATE OF WASHINGTON, *Respondent*, v. PETER ANTON
LINDAHL, *Appellant*.

2

4

*Monte E. Hester* and *Wayne C. Fricke* (of *Law Offices of Monte E. Hester, Inc., P.S.*), appellant.

*Gerald A. Horne, Prosecuting Attorney,* and *Michelle Luna-Green, Deputy,* for respondent.

SEINFELD, J. — Peter Anton Lindahl appeals the exceptional sentence he received after pleading guilty to second degree felony murder. Lindahl argues that the prosecuting attorney breached the plea agreement, that the trial court erred by allowing the victim's family representative to present both oral and written arguments in favor of an exceptional sentence, and that his 330-month sentence is both unjustified and excessive. We affirm.

## FACTS

Lindahl beat and stabbed Sheri Wolf to death on October 8, 2000. The State charged him with murder in the second degree and in the alternative with felony murder in the second degree, each with a deadly weapon enhancement.

Lindahl pleaded guilty to one count of second degree felony murder without the enhancement. As part of the plea bargain, the prosecutor agreed to recommend a standard range sentence of 123 months but also agreed that Lindahl could seek an exceptional sentence downward. The prosecutor also agreed that if the court sua sponte raised the possibility of an exceptional sentence upward, the State would oppose any such sentence. The prosecutor subsequently filed a memorandum opposing Lindahl's request for a sentence below the standard range and recommending a low-end standard range sentence of 123 months.

Wolf's family and their attorney appeared at the sentencing hearing. Lindahl argued that if the family's attorney spoke at sentencing, the family members themselves should not be allowed to speak. Lindahl also argued that the sentencing memorandum filed by the family's attorney, which recommended a 330-month exceptional sentence, was inappropriate. When the court asked the prosecutor if he had a response to these arguments or whether the court

should hear directly from the family's attorney, the prosecutor asked the court to hear from the family's attorney.

The court, after hearing from the family's attorney and defense counsel, ruled that it had discretion to allow the family's attorney, as the victim's representative, to file a written statement with the court. The court noted that the defense had had the opportunity to respond to the legal issues raised in that statement. The court also ruled that it would permit the family's attorney and family to speak.

In discussing how argument would proceed, Lindahl referred to the prosecutor's agreement to argue against an exceptional sentence upward:

> [P]art of the agreement that is not specific in the plea agreement that the Court has in front of it is that the State would advocate against an exceptional sentence upward if that should become an issue. And I am sure that the State will acknowledge that, and that was a material part of our understanding at the time we entered into the plea agreement, and we shared some written memorials of that.

Report of Proceedings (Aug. 8, 2001) (RP) at 30-31. The prosecutor responded:

> I agreed with [defense counsel] that if the Court sua sponte raised the topic of an exceptional sentence, the State would oppose that and resist that. You will have our recommendation and we feel that the standard range sentence is appropriate.
>
> There is an unusual component present in this case, as we have all seen, which is the introduction of counsel for the family members addressing the Court and seeking to argue for an exceptional sentence as the statute would allow them to do. [RCW] 9.94A.110 permits argument on behalf of the victim's family. As I have already stated our recommendation differs from theirs, but that introduces an element into this that was never even discussed or contemplated by [defense counsel] and I in settling this case. The State intends to make its recommendation and stand by it, but for [defense counsel] to suggest the State has agreed to resist all efforts of an exceptional sentence upwards, that's not an accurate representation of what we agreed.

RP (Aug. 8, 2001) at 34-35.

Defense counsel then read into the record a letter from the defense to the prosecutor disclosing Lindahl's understanding that "[the prosecutor] would advocate against an exceptional sentence upwards if the Court should head in that direction sua sponte." RP (Aug. 8, 2001) at 37. In summary, the court stated that "[w]hat I am hearing is that the State is not advocating for the recommendation posed by the victim's representative." RP (Aug. 8, 2001) at 38. Defense counsel replied, "Yes, Your Honor." RP (Aug. 8, 2001) at 38.

After the prosecutor recommended a low-end standard range sentence of 123 months, three members of Sheri Wolf's family spoke briefly about the impact of her death, and their attorney argued for an exceptional sentence upward. The defense argued for an exceptional sentence below the standard range based on Lindahl's alleged mental disorder at the time of the offense. The prosecutor opposed that recommendation.

The court found no mitigating reasons to go below the standard range and imposed an aggravated exceptional sentence of 330 months. The court subsequently entered the following findings and conclusions in support of that sentence.

FINDINGS OF FACT

I.

That the defendant pled guilty to one count of Murder in the Second Degree. That the standard range sentence is 123 to 220 months imprisonment, the seriousness level is four, and defendant's offender score is zero.

II.

That the defendant and victim Sheri Wolf were in a dating relationship at some point in time which resulted in the birth of their daughter, C.L., born May 7, 1999. CL was 17 months old on October 8, 2000.

### III.

That the defendant and Sheri Wolf were living together at the time of the murder.

### IV.

That on October 8, 2000, the defendant armed himself with a knife and repeatedly stabbed and beat Sheri Wolf, inflicting 23 separate injuries to the victim, which included:

a. Stab wound to the right thigh.

b. Stab wound to the skull.

c. Two stab wounds to the left arm.

d. Stab wound to the left wrist.

e. Stab wound to the left leg.

f. Stab wound to the right breast.

g. A fatal stab wound to the left lung.

h. A fatal stab wound to the right lung.

i. Bruising to her forehead, eyelid, nose, chin, right eyelid, right shoulder, right arm, upper right thigh, right knee, mid right leg, left thigh, left knee, left foot, and right ear.

j. A severe blow to the ear which resulted in purple contusions.

k. Injuries to the skull, which resulted in subdural hemorrhage to the left and right cerebral hemispheres.

### V.

The injuries were caused by defendant's blunt force trauma and knife. They were not inflicted by accidental means, or because of any pre-existing medical condition of the victim.

### VI.

That defendant knew victim suffered from asthma.

### VII.

That the injuries and pain inflicted on the victim were far greater than that needed to accomplish her death, or to constitute Felony Murder in the Second Degree with the predicate felony of Assault in the Second Degree.

### VIII.

That Sheri Wolf was holding C.L. off and on during the assault.

## IX.

That the defendant showed no genuine remorse for the crime as evidenced by:

a. Showing no remorse to the presentence investigator and instead explaining to the investigator that Sheri was a person most individuals disliked.

b. Blaming his actions on a failed system who took his other daughter.

c. Stating shortly after the crime during the call to 911:

"There was a fight. I was—she was threatening to throw me out of my house and take my house. Take everything from me. Telling me that it's the law. That she can take my house and take everything

". . . .

"—away. And that's what she's gonna do.

"God dammit.

". . . .

"You've just destroyed my life.

". . . .

"You've destroyed my life, Sheri. She just—thank you very much—

". . . .

"—for ruining my life."

## X.

After viewing the defendant's demeanor in court during the plea and sentencing, the court finds the defendant not credible as to his statements regarding remorse.

## XI.

The defendant did not suffer from a mental disease or defect such that his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was significantly impaired.

## XII.

The report of the examination performed by Dr. Kolbell does not establish that defendant suffered from any mental disease or defect that rises to the level of a mitigating factor.

## XIII.

The exceptional sentence is not based on any argument made by the prosecutor, and this court considered the prosecutor's statements only inasmuch as they rebutted defendant's request for mitigation.

### CONCLUSIONS OF LAW

## I.

That there are substantial and compelling reasons justifying an exceptional sentence outside the standard range. Multiple aggravating factors to support the imposition of an exceptional sentence of 330 months are listed below. However, regardless of the finding of multiple factors listed below, each aggravating factor standing alone is sufficient for the exceptional sentence imposed.

## II.

That the defendant's conduct during the commission of the current offense manifested deliberate cruelty to the victim.

## III.

That the victim suffered multiple injuries far greater than that needed to accomplish her death, or to constitute Felony Murder in the Second Degree with the predicate felony of Assault in the Second Degree.

## IV.

That the current offense involved domestic violence as defined in RCW 10.99.020 and the offense occurred within sight or sound of the victim's and defendant's 17 month old child.

## V.

That the current offense involved domestic violence as defined in RCW 10.99.020 and the defendant's conduct manifested deliberate cruelty to the victim.

## VI.

That the defendant showed no remorse for his actions.

## VII.

That there are no substantial and compelling reasons in this case to justify a sentence below the standard range.

## VIII.

That the defendant . . . should be incarcerated in the Department of Corrections for a determinate period of 330 months.

Clerk's Papers (Apr. 5, 2002) at 250-255. Lindahl appeals that exceptional sentence.

ANALYSIS

I

Lindahl argues initially that the prosecutor breached the plea agreement by suggesting that the family's attorney present argument recommending an exceptional sentence upward, by failing to argue against that recommendation, and by drafting the findings and conclusions in support of the court's exceptional sentence.

The State argues that Lindahl waived the issue of breach by failing to raise it below in either an objection or a motion to withdraw the plea. The Supreme Court recently rejected a similar argument, holding that because the failure to adhere to a plea bargain implicates due process, a defendant may raise the issue for the first time on appeal under the RAP 2.5(a)(3) "manifest error affecting a constitutional right" standard. *State v. Sanchez*, 146 Wn.2d 339, 346, 46 P.3d 774 (2002).

The State enters into a contract with a defendant when it offers a plea bargain that the defendant accepts. *State v. Jerde*, 93 Wn. App. 774, 780, 970 P.2d 781 (1999). Because a defendant gives up important constitutional rights by agreeing to a plea bargain, due process requires a prosecutor to adhere to the terms of the agreement. *Jerde*, 93 Wn. App. at 780; *State v. Sledge*, 133 Wn.2d 828, 839, 947 P.2d 1199 (1997). Although the State does not breach the agreement by not advocating for a sentence beyond making the agreed recommendation, the State may not undercut a plea bargain explicitly or by conduct showing an intent to circumvent its terms. *State v. Talley*, 134 Wn.2d 176, 183, 949 P.2d 358 (1998); *Jerde*, 93 Wn. App. at 780.

In *Sanchez*, the court found no breach of a plea agreement in cases where a community corrections officer and an investigating officer argued at sentencing for a longer

sentence than that agreed to in the plea agreement. 146 Wn.2d at 352-54. Significant to the court's analysis was the fact that neither defendant contended that the prosecutor improperly encouraged the officers to make a sentencing recommendation contrary to the plea agreement. *Sanchez*, 146 Wn.2d at 347 n.3, 352 n.8.

Here, Lindahl does make such a contention, claiming that the prosecutor deliberately set up the scenario whereby a third party would recommend an exceptional sentence. Lindahl's only support for this claim is his assertion that the prosecutor improperly encouraged the family's attorney to argue for an exceptional sentence during the sentencing hearing. The portion of the record cited, however, shows only that the prosecutor declined to offer argument about the propriety of the attorney's appearance and instead asked the court to hear directly from the attorney on the matter. Allowing the attorney to argue about her ability to represent the family did not violate the terms of the plea agreement. *See State v. Hixson*, 94 Wn. App. 862, 866, 973 P.2d 496 (1999) (prosecutor does not breach plea agreement by advising court of witnesses who wish to testify at sentencing hearing).

Lindahl also appears mistaken in his belief that the prosecutor agreed to resist any and all arguments for an exceptional sentence upward. As set forth in the record, the plea agreement required the prosecutor to oppose an exceptional sentence only in the event that the court "sua sponte" considered such a sentence. The plea agreement did not address the circumstances under which argument concerning the exceptional sentence was eventually presented. Consequently, that agreement did not require the prosecutor to oppose the family's request for an exceptional sentence.

Finally, Lindahl contends that the prosecutor breached the plea agreement by preparing the findings and conclusions in support of the exceptional sentence. After the court imposed sentence, listed the aggravating factors, and imposed Lindahl's legal financial obligations, it asked the

prosecutor to prepare the necessary paperwork and to present findings of fact and conclusions of law. When the prosecutor agreed that it should draft the findings and conclusions because the family's attorney was not an attorney of record in the case, the court replied, "That would be appropriate, since I have not permitted them to intervene, only to be a representative on behalf of [the] family." RP (Aug. 8, 2001) at 98.

■■ A plea agreement is a contract obligating the State to adhere to its terms by recommending the agreed-upon sentence to the court. *Talley*, 134 Wn.2d at 183; *Jerde*, 93 Wn. App. at 780. Lindahl offers no authority for his argument that a plea agreement obligates the State to continue making its recommendation after the court has imposed sentence. Nor does he offer any authority for the position that a plea agreement authorizes a prosecutor to refuse a court order to prepare written findings and conclusions in support of its sentence. We see no breach of the plea agreement on the State's part.

## II

■ Lindahl argues next that the trial court erred in allowing the family's attorney to present both written and oral argument in support of an exceptional sentence upward.

At the sentencing hearing, the court stated that it had discretion under "the constitution and the statutes" to allow the victim or the victim's representative to file a statement with the court and to speak during sentencing. RP (Aug. 8, 2001) at 28. Pursuant to that authority, it ruled that the attorney properly filed a sentencing memorandum and that both the attorney and family members could address the court at the sentencing hearing.

The constitutional provision to which the court referred is article I, section 35 of the Washington Constitution. This provision addresses the rights of crime victims and allows victims or their representatives to make a statement at

sentencing. *State v. Gentry*, 125 Wn.2d 570, 624, 888 P.2d 1105 (1995). With the adoption of article I, section 35, crime victims have constitutional rights during the sentencing phase of a defendant's trial. *Gentry*, 125 Wn.2d at 626. This constitutional amendment expressly provides that it "shall not constitute a basis for error in favor of a defendant in a criminal proceeding." CONST. art. I, § 35.

The statutes to which the trial court referred include RCW 7.69.030, which allows victims or the survivors of victims, or their representatives, to submit victim impact statements to the court and to personally present a statement at a felony sentencing hearing. RCW 7.69.030(13), (14). In addition, former RCW 9.94A.110(1) (2000)[1] provides that during a sentencing hearing, the court "shall consider . . . any victim impact statement . . . and allow arguments from the prosecutor, the defense counsel, the offender, the victim, the survivor of the victim, or a representative of the victim or survivor, and an investigating law enforcement officer as to the sentence to be imposed." In interpreting this statute, the Supreme Court observed that it provides " 'a baseline—a minimum amount of information which, if available and offered, *must* be considered in sentencing.' " *Sanchez*, 146 Wn.2d at 353 (quoting *State v. Mail*, 121 Wn.2d 707, 711, 854 P.2d 1042 (1993)).

In *Sanchez*, the court held that it was not error for a community corrections officer (CCO) to argue for an exceptional sentence because although former RCW 9.94A.110 did not require oral argument from a CCO, it did not disallow such argument. 146 Wn.2d at 354. Similarly, Division Three of the Court of Appeals held that it was not error under former RCW 9.94A.110 for a trial court to allow both the victim's mother and her attorney to address the court during sentencing, finding that the statute "mandates that the persons listed must be permitted to speak but does not limit the court's discretion in hearing from others." *Hixson*, 94 Wn. App. at 866. Although Division Three then

---

[1] *Recodified as* RCW 9.94A.500(1) (LAWS OF 2001, ch. 10, § 6).

reasoned that any error in allowing the attorney's argument was harmless since the trial court did not impose the exceptional sentence requested, such reasoning is dictum given the court's earlier holding that the attorney's argument was not error. *See Hixson*, 94 Wn. App. at 866.

Lindahl concedes that the authority cited above allowed both the victim's family members and their attorney to speak at the sentencing hearing but argues without analysis or citation to authority that the type of argument allowed and the written memorandum filed exceeded that permissible under article I, section 35 and chapter 7.69 RCW. Given the discretion accorded trial courts to consider the arguments of persons other than those enumerated in RCW 9.94A.500 during a sentencing hearing, it would appear that such discretion applies as well to the consideration of written materials filed in support of such argument. We conclude that the trial court did not err in allowing the family's attorney to address the court at the sentencing hearing and to file a sentencing memorandum as well.

### III

Lindahl next contends that the trial court erred in imposing an aggravated exceptional sentence of 330 months.

Under the Sentencing Reform Act of 1981, chapter 9.94A RCW, a trial court must impose a sentence within the standard range unless it finds substantial and compelling reasons to justify a departure. Former RCW 9.94A.120(2) (2000).[2] In reviewing an exceptional sentence upward, this court considers whether (1) the record supports the reasons justifying the exceptional sentence; (2) those reasons justify a departure from the standard range as a matter of law; and (3) the sentence imposed is clearly excessive. Former

---

[2] *Recodified as* RCW 9.94A.505(2) (Laws of 2001, ch. 10, § 6).

RCW 9.94A.210(4) (1989);[3] *State v. Overvold*, 64 Wn. App. 440, 444, 825 P.2d 729 (1992).

Lindahl argues first that findings IV-VII cannot justify the aggravating factor of deliberate cruelty as a matter of law. He points out that deliberate cruelty is defined as "gratuitous violence or other conduct which inflicts physical, psychological, or emotional pain as an end in itself." *State v. Scott*, 72 Wn. App. 207, 214, 866 P.2d 1258 (1993), *aff'd sub nom. State v. Ritchie*, 126 Wn.2d 388, 894 P.2d 1308 (1995). Lindahl maintains that nothing in the record shows that he inflicted gratuitous pain as an end in itself and argues that this case is similar to one where the court found that the defendant's act in shooting the victim five times did not demonstrate deliberate cruelty. *State v. Serrano*, 95 Wn. App. 700, 713, 977 P.2d 47 (1999).

When the defendant strikes more blows than are necessary to accomplish the underlying crime, the deliberate cruelty enhancement applies. *State v. Sims*, 67 Wn. App. 50, 61, 834 P.2d 78 (1992); *see also State v. Franklin*, 56 Wn. App. 915, 918, 786 P.2d 795 (1989) (finding second stab wound demonstrated deliberate cruelty because crime was complete with first stabbing). Repeated blows to a victim constituted deliberate cruelty and justification for an exceptional sentence in *State v. George*, 67 Wn. App. 217, 222, 834 P.2d 664 (1992), *overruled on other grounds by State v. Ritchie*, 126 Wn.2d 388, 894 P.2d 1308 (1995). Similarly, the record supported the finding that the defendant killed his victim in a deliberately cruel manner by repeated bludgeoning and stabbing, which left her barely alive but in pain and agony until she died. *State v. Campas*, 59 Wn. App. 561, 566, 799 P.2d 744 (1990).

In this case, Wolf was dead by the time officers arrived at the scene and there is no evidence regarding the immediacy of her death following the altercation. The repeated blows and stabbings she sustained, however, which included two fatal stab wounds, are sufficient to support the court's finding of deliberate cruelty.

---

[3] *Recodified as* RCW 9.94A.585(4) (Laws of 2001, ch. 10, § 6).

Lindahl next challenges the court's use of multiple injuries as an aggravating factor, arguing that this factor applies only where a defendant inflicts injuries apart from those resulting in death.

▉▉ Assuming that this is so, the court's findings amply illustrate that Lindahl inflicted injuries apart from the stabbings that killed Wolf. It is well settled that the same acts of a defendant can support findings of both deliberate cruelty and multiple injuries justifying an exceptional sentence upward. *State v. Smith*, 82 Wn. App. 153, 165, 916 P.2d 960 (1996); *see also George*, 67 Wn. App. at 222 (acts showing deliberate cruelty would support an exceptional sentence based on the infliction of multiple injuries). The court did not err in citing Wolf's multiple injuries as an aggravating factor.

Lindahl next contends that the acts at issue do not allow an enhanced sentence under the "domestic violence" aggravating factor set forth in former RCW 9.94A.390(2)(h) (2001).[4] This factor applies if the current offense involved domestic violence, as defined in RCW 10.99.020, and if the offense occurred within the sight or sound of the victim's minor children or if the offender's conduct during the commission of the current offense manifested deliberate cruelty. Former RCW 9.94A.390(2)(h)(ii), (iii). Lindahl maintains that this factor does not apply because the definition of domestic violence in RCW 10.99.020 does not include murder, because his acts did not demonstrate deliberate cruelty, and because there is no evidence showing that his daughter was traumatized by witnessing her mother's death.

▉ RCW 10.99.020(3) defines domestic violence as including, but not being limited to, a list of several crimes "when committed by one family or household member against another." Although murder is not included in that list, the definition expressly states that domestic violence is not limited to the crimes listed. Accordingly, the court did

---

[4] *Recodified as* RCW 9.94A.535(2)(h) (LAWS OF 2001, ch. 10, § 6).

not err in considering Lindahl's murder of his live-in girl friend as an offense involving domestic violence.

█ █ As explained above, Lindahl's actions demonstrated deliberate cruelty, and the trial court did not err in applying the domestic violence/deliberate cruelty aggravating factor. With regard to the need to demonstrate that Wolf's daughter experienced emotional trauma, there is no such requirement in the statute. Rather, it provides that the aggravating factor is established if the offense occurs within the sight or sound of the victim's minor children. Former RCW 9.94A.390(2)(h)(ii). Lindahl told officers that Wolf held the child off and on during the fight, and officers found the child sitting next to her mother's body when they arrived at the house. The trial court did not err in relying on the presence of the victim's child during an offense involving domestic violence in imposing the exceptional sentence.

Finally, Lindahl challenges the court's conclusion that he showed no remorse for his actions. He argues that he showed remorse by calling 911 after he killed Wolf and that he expressed remorse during the sentencing hearing.

█ A defendant's lack of remorse may be a sufficient aggravating factor to justify an exceptional sentence. *State v. Ross*, 71 Wn. App. 556, 563, 861 P.2d 473, 883 P.2d 329 (1993); *State v. Stuhr*, 58 Wn. App. 660, 664, 794 P.2d 1297 (1990). To serve as an aggravating factor, however, the lack of remorse must be of an aggravated or egregious nature. *Ross*, 71 Wn. App. at 563; *State v. Wood*, 57 Wn. App. 792, 800, 790 P.2d 220 (1990). Credibility determinations are for the trial court. *Ross*, 71 Wn. App. at 564.

Although Lindahl did call 911 after he killed Wolf, the court found that his statements during that call demonstrated a lack of remorse. The court also cited the contents of Lindahl's letter to the presentence investigator, his statements to that investigator, and his demeanor during the plea hearing and at sentencing as evidence of his lack of remorse. The record supports the court's findings regarding Lindahl's lack of remorse following the murder, and we

defer to the trial court on the issue of his credibility during the plea and sentencing hearings.

Finally, Lindahl contends that the sentence he received is within the standard range for a person with an offender score of nine and is excessive given his lack of criminal history. He points out that the State and the presentence investigator recommended sentences of 123 and 160 months.

A sentence is clearly excessive if it is clearly unreasonable, i.e., exercised on untenable grounds or for untenable reasons, or an action that no reasonable person would have taken. *Ritchie*, 126 Wn.2d at 393 (citing *State v. Oxborrow*, 106 Wn.2d 525, 531, 723 P.2d 1123 (1986)). Stated another way, the sentence is excessive if its length, in light of the record, "shocks the conscience." *Ross*, 71 Wn. App. at 571.

Here, the trial court's reasons for imposing the exceptional sentence were substantial and compelling. The standard range sentence was 123 to 220 months; the maximum sentence allowable was life imprisonment. The 330-month sentence does not shock the conscience and is not clearly excessive.

Affirmed.

HUNT, C.J., and ARMSTRONG, J., concur.

Review denied at 149 Wn.2d 1013 (2003).