[No. 25475-5-III.   Division Three.   May 20, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. TROY DEAN STUBBS, *Appellant*.

*Troy Dean Stubbs*, pro se.

*David N. Gasch* (of *Gasch Law Office*), for appellant.

*Thomas A. Metzger, Prosecuting Attorney*, and *Antonio D. Koures, Deputy*, for respondent.

¶1 BROWN, J. — Troy Dean Stubbs appeals his exceptional sentence for his first degree assault conviction, contending the trial court erred in considering the severity of the victim's injuries as an aggravating factor under RCW 9.94A.535(3)(y) and instructional vagueness. We disagree. Pro se, Mr. Stubbs expresses various concerns that we either reject or cannot address. Accordingly, we affirm.

## FACTS

¶2 Early on October 4, 2005, Mr. Stubbs, for unclear reasons, stabbed Ryan Goodwin once in the back of the neck with a knife. Mr. Goodwin's spinal cord was severed,

resulting in partial paralysis of his arms and chest and complete paralysis from the waist down. Mr. Goodwin is permanently confined to a wheelchair. Trial testimony showed Mr. Stubbs was partying with friends near Mr. Goodwin's home. The group was drinking and using methamphetamine. Around 2 a.m., Holly Stigall, Mr. Goodwin's girl friend, left the party to join Mr. Goodwin. About an hour later, several people from the party arrived at the Stigall/Goodwin home to get the couple to join them. Eventually, just Mr. Goodwin, Mr. Stubbs, and another male remained.

¶3 Mr. Stubbs and Mr. Goodwin began to argue. To divert Mr. Goodwin's attention, Mr. Stubbs told him a huge spider was behind him. When Mr. Goodwin turned to look for the spider, Mr. Stubbs stabbed Mr. Goodwin in the back of the neck. Mr. Goodwin dropped the burner he was holding, which caused a small fire. Mr. Stubbs ignored his pleas for help and ran away, forcing Mr. Goodwin to put the fire out with his bare arms. Mr. Goodwin was left with the knife embedded in his neck and unable to move his legs. He managed to reach a cell phone at arm's length to call for help. He was taken to a hospital by ambulance.

¶4 The State charged Mr. Stubbs with first degree assault while armed with a deadly weapon other than a firearm. Later, the State added the allegation that the "victim's injuries substantially exceed the level of bodily harm necessary to satisfy the elements of Assault in the First Degree as charged as such an exceptional sentence outside the standard range is justified pursuant to RCW 9.94A.535[(3)](y)." Clerk's Papers at 12. Before trial, the State successfully moved to submit this aggravating factor to the jury over Mr. Stubbs' objection that Mr. Goodwin's injuries did not exceed the level of bodily harm necessary to satisfy the elements of first degree assault.

¶5 At trial, Dr. Vivian Moise, a specialist in spinal cord injuries, described Mr. Goodwin's injuries. She testified that the stabbing severed Mr. Goodwin's spinal cord in half. This resulted in about 50 percent loss of strength in his left

arm and roughly two-thirds loss of strength in his right hand. Mr. Goodwin's diaphragm still worked, but his rib cage muscles, which assist with breathing, were permanently paralyzed, increasing his risk of pneumonia. His bladder and intestines were paralyzed. She also explained that paralysis causes other medical problems, including higher risks of stroke, seizure, and death, and a shortened life expectancy. The jury convicted Mr. Stubbs of first degree assault while armed with a deadly weapon and found the victim's injuries substantially exceeded the level of harm necessary to satisfy the offense elements.

¶6 At sentencing, the State asked the court to impose a life sentence based on the severity of Mr. Goodwin's injuries. Mr. Stubbs argued he should not receive a sentence exceeding the standard range for second degree murder, which was 199 to 299 months. The trial court sentenced Mr. Stubbs to 480 months. The standard range was 186 to 240 months. The court justified the sentence based on the severity of Mr. Goodwin's injuries, characterizing his condition as a "fate worse than death." Report of Proceedings (Sept. 17, 2006) at 55. Mr. Stubbs appealed.

## ANALYSIS

### A. Exceptional Sentencing

¶7 The issue is whether the trial court erred by considering the severity of Mr. Goodwin's injuries as the basis for Mr. Stubbs' exceptional sentence. Mr. Stubbs contends Mr. Goodwin's injuries inhere in first degree assault and cannot justify an exceptional sentence. The State responds that the definition of "great bodily harm" in the first degree assault statute does not account for the severity of Mr. Goodwin's injuries.

■ ■ ¶8 A court may depart from a standard range sentence if the offense involves substantial and compelling circumstances. *State v. Hammond*, 121 Wn.2d 787, 794, 854 P.2d 637 (1993). We apply the clearly erroneous standard to

review the imposition of an exceptional sentence. *State v. Nordby*, 106 Wn.2d 514, 517-18, 723 P.2d 1117 (1986). A reason for imposing an exceptional sentence is clearly erroneous if it is not supported by substantial evidence. *State v. Jeannotte*, 133 Wn.2d 847, 856, 947 P.2d 1192 (1997). We determine whether, as a matter of law, "factually supported aggravating factors justify an exceptional sentence." *State v. Russell*, 69 Wn. App. 237, 250, 848 P.2d 743 (1993). Our review of the legal sufficiency of the sentence is, therefore, de novo. *State v. Smith*, 124 Wn. App. 417, 435, 102 P.3d 158 (2004), *aff'd*, 159 Wn.2d 778, 154 P.3d 873 (2007).

¶9 The trial court justified the 480-month sentence based on the severity of Mr. Goodwin's injuries, finding they were substantially more severe than required under the first degree assault statute. Generally, the seriousness of a victim's injuries is a valid aggravating factor as long as the injuries are "significantly more serious than what is typically involved in the crime." *State v. Warren*, 63 Wn. App. 477, 479, 820 P.2d 65 (1991). But the seriousness of the victim's injuries cannot support an exceptional sentence if the factor was considered by the legislature in defining the crime itself. *State v. Bourgeois*, 72 Wn. App. 650, 661-62, 866 P.2d 43 (1994).

¶10 Mr. Stubbs stabbed Mr. Goodwin in the back of his neck with a knife, causing severe paralysis. Mr. Goodwin dropped the burner he was holding, starting a fire. Mr. Stubbs callously ignored Mr. Goodwin's pleas for help and ran away, forcing Mr. Goodwin to put the fire out with his bare arms, causing further injury. Dr. Vivian Moise testified about Mr. Goodwin's loss of strength and paralyzed rib cage muscles, bladder, and intestines. Dr. Moise predicted an increased risk of pneumonia, stroke, seizure, and death and gave Mr. Goodwin a 17-year-shortened life expectancy.

¶11 The jury found that Mr. Goodwin's injuries substantially exceeded the level of bodily harm necessary to satisfy the first degree assault elements, considering the great

bodily harm definition. The sentencing court properly exercised its discretion in acting on the special verdict finding when ordering this exceptional sentence. The jury could well find that Mr. Stubbs did not just threaten Mr. Goodwin's death or cause significant serious permanent loss or impairment to the functioning of his bodily parts or organs. Mr. Stubbs actually caused the risks noted by Dr. Moise and shortened Mr. Goodwin's life expectancy by 17 years.

¶12 Given the evidence, the jury could find Mr. Goodwin did not present as a typical fixed and stable victim of first degree assault because Mr. Goodwin remains in jeopardy of death in a manner exceeding great bodily harm and has been forced to live in a suspended, tortured state between life and death during his shortened life expectancy.

¶13 Next Mr. Stubbs contends RCW 9.94A.535(3)(y) and the aggravating circumstance instruction violate due process vagueness prohibitions. Mr. Stubbs first argues RCW 9.94A.535(3)(y) gives excessive subjectivity to a jury's factual determinations.

¶14 Generally, the void for vagueness doctrine does not apply to a sentencing scheme. *State v. Baldwin*, 150 Wn.2d 448, 458, 78 P.3d 1005 (2003). The void for vagueness doctrine applies to laws that involve conduct, not sentencing directives. Further, a statute is not impermissibly vague merely because some facts could exist where all its possible applications cannot be anticipated. *State v. Worrell*, 111 Wn.2d 537, 541, 761 P.2d 56 (1988). Mr. Stubbs' challenge fails to reference the facts of his case. Even so, the statue is not vague because it apprises the individuals that inflicting serious bodily injury upon another would subject them to a higher sentence.

¶15 Mr. Stubbs next argues the jury instruction was unconstitutionally vague. A jury instruction is not unconstitutionally vague if it has a commonsense meaning that juries could understand. *Tuilaepa v. California*, 512 U.S. 967, 976, 114 S. Ct. 2630, 129 L. Ed. 2d 750 (1994); *State v. Elmore*, 139 Wn.2d 250, 289-90, 985 P.2d 289

(1999). Here, the term "substantially exceeds" is not vague because it denotes ascertainable standards for an exceptional sentence and is used in relationship to the definition for great bodily harm, which provides the jury with a standard for comparison. Accordingly, there is no constitutional vagueness violation.

## B. Juvenile Adjudications

¶16 The next issue is whether the trial court erred in including Mr. Stubbs' juvenile adjudications in calculating his offender score. Mr. Stubbs contends his juvenile adjudications do not carry the same procedural safeguards as adult convictions and should not fall under the prior conviction exception in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).[1] However, his supporting arguments have been considered and rejected by our Supreme Court. *See State v. Weber*, 159 Wn.2d 252, 255, 149 P.3d 646 (2006), *cert. denied*, 127 S. Ct. 2986 (2007). After reviewing cases from numerous states, the *Weber* court concluded that juvenile adjudications fall under the prior adjudication exception. *Weber*, 159 Wn.2d at 262. Mr. Stubbs' argument therefore fails. The trial court did not err in including his juvenile offenses in calculating his offender score.

## C. Statement of Additional Grounds for Review

¶17 Pro se, Mr. Stubbs voices various concerns. He broadly asserts the jury panel was improperly selected and defense counsel was ineffective for failing to exclude certain jurors. He claims several jurors were biased, the State improperly obtained evidence, and witnesses had credibility problems.

---

[1] In excluding prior convictions as facts a jury must find in order to enhance a defendant's sentence, the *Apprendi* court reasoned, "[T]he certainty that procedural safeguards attached to any 'fact' of prior conviction . . . mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a 'fact' increasing punishment beyond the maximum statutory range." *Apprendi*, 530 U.S. at 488.

¶18 Mr. Stubbs suggests we review inconsistent, incredible, perjured witnesses' statements, but credibility determinations are for the finder of fact, not a review court. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). Mr. Stubbs fails to elaborate on his other concerns, cite any authority, or reference the relevant parts of the record as required under RAP 10.3(a)(5) and (6). Passing treatment of an issue or lack of reasoned argument is insufficient to allow for our meaningful review. *State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992); RAP 10.3(a)(5). Thus, we are not able to address his remaining concerns. Affirmed.

KULIK, J., concurs.

¶19 SCHULTHEIS, C.J. (dissenting) — I respectfully dissent. Particularly severe injuries may be used to enhance a defendant's sentence only if they are greater than those contemplated by the legislature in establishing the standard range sentence. *State v. Nordby*, 106 Wn.2d 514, 723 P.2d 1117 (1986). While Ryan Goodwin's injuries are unquestionably severe, they inhere in the crime of first degree assault and therefore cannot justify an exceptional sentence. I would therefore remand for a sentence within the standard range.

¶20 A conviction for first degree assault requires proof that the defendant caused "great bodily harm." RCW 9A.36.011. The majority holds that the sentencing court properly exercised its discretion in accepting the jury's finding that Mr. Goodwin did not present as a typical victim of first degree assault and finds Mr. Goodwin's injuries exceeded the statutory definition of "great bodily harm" due to his shortened life expectancy and the difficulties of his daily life.

¶21 The majority ignores statutory language that defines "great bodily harm" as "bodily injury which creates a probability of death." RCW 9A.04.110(4)(c). This language is crucial in evaluating the type of injury envisioned by the

legislature in setting the standard range for first degree assault. Troy Dean Stubbs argues that this definition "encompasses either the intent or actual infliction of the most severe bodily injury short of death." Br. of Appellant at 9. I agree and conclude that Mr. Goodwin's injuries fall squarely within the statutory definition. In fact, even the majority characterizes Mr. Goodwin's injuries as creating a probability of death.

¶22 *State v. Bourgeois*, 72 Wn. App. 650, 866 P.2d 43 (1994) is instructive here. In that case, the juvenile defendant was convicted of two counts of first degree assault after shooting two people. One of the victims suffered the loss and functioning of multiple organs: his spleen was removed, and a portion of his pancreas and colon were removed, requiring a colostomy. *Id.* at 652. The juvenile court imposed a manifest injustice disposition upward, finding the victim's injuries were more severe than contemplated by the first degree assault statute and " 'capable of causing death.' " *Id.* at 662 (quoting trial court).

¶23 In reversing the disposition, Division One of this court concluded that the injuries in question "unambiguously" fell within the legislature's definition of first degree assault. *Id.* Similarly, Mr. Goodwin's injuries fit the statutory definition. The majority finds that his paralysis and shortened life expectancy justify an exceptional sentence, but it is just this "probability of death" that places Mr. Goodwin's injuries squarely within the scope of the statutory definition. RCW 9A.04.110(4)(c).

¶24 In reaching this conclusion, I am mindful of the lack of gratuitous violence in *Bourgeois*, 72 Wn. App. at 663. In reversing the manifest injustice disposition, the court compared its facts to those in *State v. George*, 67 Wn. App. 217, 220, 834 P.2d 664 (1992), *overruled on other grounds by State v. Ritchie*, 126 Wn.2d 388, 894 P.2d 1308 (1995), where the defendants hit an elderly woman in the face three times, held her down for 15 minutes, robbed and raped her, and then beat her in the head multiple times with the stock of a rifle, using so much force the rifle broke.

The woman's skull was fractured and she was left with permanent brain damage and in a semivegetative state. *Id.* at 220.

¶25 The court affirmed the exceptional sentence for first degree assault, finding the woman's injuries were more serious than the typical first degree assault. *Id.* at 223. Significantly, in reaching this conclusion, the court noted the multiple acts and the "deliberate and gratuitous violence" that caused the victim's injuries. *Id.* at 223 n.3.

¶26 This case lacks the drawn out, gratuitous violence present in *George.* The injuries here were the result of a single, impulsive act. And though severe, they fall within the range of injuries contemplated by the first degree assault statute. Not all first degree assaults will result in injuries as serious as Mr. Goodwin's. But that is not the test. We evaluate whether the legislature contemplated such injuries in setting the standard range sentence. The standard range for first degree assault encompasses a wide range of injuries, including those short of death. RCW 9A.04.110(4)(c). Because Mr. Goodwin's injuries fall within this statutory range, the sentencing court erred in considering the severity of the injuries to support the exceptional sentence. Therefore, I respectfully dissent.

Reconsideration denied June 20, 2008.

Review granted at 165 Wn.2d 1035 (2009).