IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39249-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSEPH M. GRAY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

COONEY, J. — Joseph Gray was charged with first degree murder and first degree robbery. A jury acquitted him of murder and found him guilty of robbery. Mr. Gray appeals his sentence, arguing that his due process rights were violated during the sentencing hearing when the trial court considered a video and photomontage commemorating the life of the victim. Mr. Gray also appeals the trial court's imposition of the DNA collection fee and the victim penalty assessment (VPA). We affirm Mr. Gray's sentence and remand for the trial court to strike the DNA collection fee and VPA from the judgment and sentence.

## BACKGROUND

Mr. Gray was charged with first degree murder and first degree robbery. The charges stemmed from an incident in which Mr. Gray shot and killed Christopher Smith over drug-related money.

At trial, Mr. Gray testified that he had arranged to buy heroin from a known drug dealer, Kevin Beaver. Mr. Beaver arrived with Mr. Smith, whom Mr. Gray knew to have been recently released from prison, gang-affiliated, and active in trafficking guns and drugs. Mr. Gray gave Mr. Smith $4,500 in exchange for heroin, only to later discover the heroin was not genuine. Upset with being "ripped off" and intent on retrieving his $4,500, Mr. Gray then traveled to Mr. Beaver's home. Rep. of Proc. (RP) at 578. Mr. Smith, who was also at Mr. Beaver's home, denied having the money.

After Mr. Smith told Mr. Gray to speak with some people in a car parked in front of the home, Mr. Smith ran out a back door on foot. Mr. Gray tracked Mr. Smith's footprints in the snow to a nearby "old folks' home." *Id*. at 582. When Mr. Gray encountered Mr. Smith, an argument ensued. RP at 583. Mr. Gray snatched a bag from Mr. Smith that he thought contained the $4,500. RP at 585. After he purloined the bag, Mr. Gray testified that Mr. Smith told him, "You're fucking dead." *Id*. at 586. Mr. Gray then shot Mr. Smith in the chest. Mr. Smith died from his injuries.

A jury acquitted Mr. Gray of first degree premeditated murder but found him guilty of first degree robbery and returned a special verdict finding that Mr. Gray was armed with a firearm during the commission of the robbery.

Among others, Mr. Smith's mother, girlfriend, and daughter were present at Mr. Gray's sentencing. Mr. Smith's mother and girlfriend presented victim impact statements to the court. The State, on behalf of Mr. Smith's family, requested permission to play a

short video and display a photomontage depicting Mr. Smith. Mr. Gray's counsel objected to the admission of the video and photomontage on the basis that they were "improper" because "we're here for a sentencing for a robbery and not for the sentencing of murder." *Id*. at 714.

The court explained that it had "wide discretion to determine the manner and extent of . . . crime victim impact statement[s]" and recognized that crime victims have constitutional rights. *Id*. The court further stated it was "taking into account that Mr. Gray has been convicted of a most serious offense, during the course of which Mr. Smith died" and that "[w]hat I'm doing today is not based on anything for which he was acquitted; it's that for which he was convicted." *Id*. The court further recognized Mr. Smith's family's desire to rebut Mr. Gray's depiction of Mr. Smith being a gang-affiliated drug dealer who was always armed with a gun. The court admitted both the video and photomontage.

The video was over four minutes in length and contained images and short recordings of Mr. Smith with family, friends, his girlfriend, and his young daughter. The video opened with a recorded message from Mr. Smith, presumably to his girlfriend, in which he stated he loved her. The majority of the video was set to Bill Withers' "Lean on Me." The video concluded with a photo of Mr. Smith as a child and artwork created by his daughter with a message that said "Dear Daddy, my dad is important to me because he loves me no matter what even if he's not here, love E[ ]." Ex. 3, at 3 min., 57

3

sec. to 4 min., 4 sec. The photomontage contained 38 images of Mr. Smith with family, friends, his girlfriend, and his daughter.

Ultimately, the court sentenced Mr. Gray to 48 months of confinement, the high-end of the standard range, consecutive to a 60-month firearm enhancement. The court also ordered the then-mandatory DNA collection fee and VPA.

Mr. Gray appeals.

ANALYSIS

On appeal, Mr. Gray argues that his due process rights under the Fourteenth Amendment to the United States Constitution were violated at sentencing and, because he is indigent, the court erred when it ordered the VPA and the DNA collection.

We disagree with Mr. Gray's first contention and accept the State's concession on the second.

I.   WHETHER MR. GRAY'S DUE PROCESS RIGHTS WERE VIOLATED AT SENTENCING

Mr. Gray argues that his due process rights under the Fourteenth Amendment were violated at sentencing. Specifically, Mr. Gray contends the trial court's consideration of a photomontage and video presented during Mr. Smith's family's victim impact statements rendered the sentencing hearing fundamentally unfair. We disagree.

Washington Constitution's article I, section 35 (amend. 84) provides crime victims and their families or representatives the opportunity to make a statement at a defendant's

sentencing. *See also State v. Gentry*, 125 Wn.2d 570, 624, 888 P.2d 1105 (1995). As it relates to the rights of victims and their families, the amendment provides, "[t]his provision shall not constitute a basis for error in favor of a defendant in a criminal proceeding." WASH. CONST. art. I, § 35. In addition to constitutional protections, RCW 7.69.030(m) and (n) permit victims and victim's families or representatives to submit victim impact statements to the court and to personally make a statement at a sentencing hearing in a felony case. Judges also possess discretion to consider written materials provided by crime victims and their families. *State v. Lindahl*, 114 Wn. App. 1, 15, 56 P.3d 589 (2002).

"[T]rial courts, which are experienced in balancing the probative against the prejudicial, should exercise their informed discretion in deciding the scope of permissible victim impact evidence in a given case." *Gentry*, 125 Wn.2d at 632-33. However, if "victim impact evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Fourteenth Amendment's Due Process Clause provides a mechanism for relief." *Payne v. Tennessee*, 501 U.S. 808, 809, 111 S. Ct. 2597, 115 L. Ed. 2d 720 (1991).

Generally, this court reviews constitutional issues de novo. *State v. Mullen*, 171 Wn.2d 881, 893-94, 259 P.3d 158 (2011).

A. RULE OF APPELLATE PROCEDURE 2.5

The State first asserts that any perceived error was not preserved for our review. We disagree.

The State recognizes that defense counsel *did* object to the admission of the video and photomontage, but seems to contend that Mr. Gray was required to state specifically that he was objecting on the basis that the video and photomontage violated his due process rights. Indeed, defense counsel stated, "[W]e oppose that the video is played and we oppose the poster board because we're here for a sentencing for a robbery and not for the sentencing of murder." RP at 714. Further, defense counsel stated, "[I]t's improper to show the video of Mr. Smith." Defense counsel's objection sufficiently preserved the alleged error for our review.

B. APPEALABILITY OF STANDARD RANGE SENTENCE

The State next argues that because Mr. Gray received a standard range sentence, the sentence cannot be appealed. We disagree.

Generally, a defendant may not appeal a standard range sentence. *State v. Williams*, 149 Wn.2d 143, 146, 65 P.3d 1214 (2003). However, a defendant is "not precluded from challenging on appeal the procedure by which a sentence within the standard range was imposed." *State v. Ammons*, 105 Wn.2d 175, 183, 713 P.2d 719 (1986). Mr. Gray challenges the procedure by which his sentence was imposed. His argument focuses on the court's consideration of materials he alleges were unduly

6

prejudicial, rendering his sentencing hearing fundamentally unfair. Thus, he is permitted to appeal his standard range sentence.

## C.    DUE PROCESS

Turning to the merits, Mr. Gray contends the admission of the video and photomontage presented by Mr. Smith's family violated his due process rights. We disagree.

In *State v. Schierman*, our Supreme Court addressed whether admission of a memorial service video at a sentencing hearing violated Mr. Schierman's due process rights. 192 Wn.2d 577, 694-702, 438 P.3d 1063 (2018).[1] There, the video at issue was prepared by the victims' family members, was 15 minutes in length, and included still and moving images of the victims, and "a few captions with phrases like 'you are gone, but not forgotten.'" *Id.* at 701. The video also included images of the adult victims and children and a few images of "clouds and coastlines." *Id.* The trial court admitted the video, but ruled that the video must be played without audio because the soundtrack accompanying the video "magnif[ied] tremendously" the religious and spiritual aspects of the victims' lives and was an "inappropriate attempt[ ] to influence through those means the jury's decision." *Id.* at 696.

---

[1] The penalty phase in *Schierman* lasted nearly one month and involved a jury that voted to impose the death penalty. *Id.* at 595. Here, sentencing was before a judge.

On review, the Supreme Court held that "[t]he captions and images of nature are the kind of stylized elements that courts have deemed inflammatory and therefore inadmissible." *Id.* at 701. It also found that the images of the adult victims as children were "problematic." *Id.* However, the court ruled that the "emotional impact of those fleeting elements [was] negligible compared with the impact of the many still and moving images." *Id.* at 702. Ultimately, the court held, "In light of our precedent allowing the State to present victim impact evidence, the trial court did not err by admitting the video without sound." *Id.*

Though defense counsel objected to the court's consideration of the video and photomontage, the court overruled the objection noting that the court had "wide discretion to determine the manner and extent of a crime victim impact statement." *Id.* at 715. The court also recognized that there was "not a jury here" and reiterated that, "What I'm doing today is not based on anything for which [Mr. Gray] was acquitted; it's that for which he was convicted." *Id.* The court also recognized the victim's family members' "constitutional right to be heard on who Mr. Smith was and the impact of his loss," especially after Mr. Gray's characterization of Mr. Smith as a gang-affiliated drug dealer who was always armed with a gun. *Id.* at 716.

Mr. Gray argues the video was improper because he was being sentenced for robbery, not murder. However, as the court recognized, "Mr. Smith's death didn't occur in a vacuum." *Id.* at 733. The court was well aware that Mr. Gray shot and killed Mr.

8

Smith during the commission of the robbery. Forsooth, at trial Mr. Gray even testified to shooting Mr. Smith. It was not unduly prejudicial for the trial court to consider the impact that Mr. Smith's death had on his family due to Mr. Gray's actions while committing the robbery.

Further, admission of the video and photomontage did not violate Mr. Gray's due process rights by rendering the sentencing hearing fundamentally unfair. The video consisted of pieced together photos and videos, primarily depicting objective representations of Mr. Smith and his girlfriend and daughter, not a stylized production of tributes. The video was also informational, containing a short voice message from Mr. Smith telling his girlfriend how much he loved her, and a single image of him as a child. Even if the voice message and the single photo of Mr. Smith as a child were problematic, like in *Schierman*, those brief elements were fleeting. 192 Wn.2d at 702.

Similar to the video, the photomontage consisted of objective representations of Mr. Smith's life, not a stylized production of tributes to him. The video and photomontage were not unduly prejudicial. Mr. Grays' sentencing hearing was not fundamentally unfair.

Lastly, although sentenced within the standard range, Mr. Gray inveighs the trial court's imposition of a high-end sentence. In deciding the sentence, the trial court looked to "the facts and circumstances" of the crime and reiterated "for the record that I am not doing this because a jury didn't find you guilty of premeditated murder and I'm exacting

9

a pound of flesh for that." RP at 735. There is no evidence that the court's sentencing decision was influenced by the video or photomontage. Mr. Gray's sentencing hearing was not fundamentally unfair;[2] his due process rights were not violated.

      II.      WHETHER THE DNA COLLECTION FEE AND VPA SHOULD BE STRUCK FROM MR. GRAY'S JUDGMENT AND SENTENCE

Mr. Gray requests that we remand for the trial court to strike the DNA collection fee and the VPA from the judgment and sentence. The State concedes.

Former RCW 7.68.035(1)(a) (2018) required a VPA be imposed on any individual found guilty of a crime in superior court. In April 2023, the legislature passed Engrossed Substitute H.B. 1169 (H.B. 1169), 68th Leg., Reg. Sess. (Wash. 2023), that amended RCW 7.68.035 to prohibit the imposition of the VPA on indigent defendants. RCW 7.68.035 (as amended); H.B. 1169, § 4. H.B. 1169 took effect on July 1, 2023. Amendments to statutes that impose costs upon convictions apply prospectively to cases pending on appeal. *See State v. Ramirez*, 191 Wn.2d 732, 748-49, 426 P.3d 714 (2018).

Similarly, pursuant to former RCW 43.43.7541 (2018), the trial court was required to impose a $100 DNA collection fee for every sentence imposed for the crimes specified in RCW 43.43.754. Effective July 1, 2023, the legislature amended RCW 43.43.7541 by eliminating language that made imposition of the DNA collection fee mandatory. *See* LAWS OF 2023, ch. 449, § 4.

---

[2] Mr. Gray argues that resentencing should be before a different judge. Because remand is unnecessary, that issue is not addressed.

Because Mr. Gray's case is pending on direct appeal, the amendments apply.

Further, Mr. Gray was found to be indigent. Thus, we remand for the trial court to strike

the DNA collection fee and VPA from the judgment and sentence.

We affirm Mr. Gray's sentence and remand for the trial court to excise from the

judgment and sentence the DNA collection fee and VPA.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Cooney, J.

WE CONCUR:

_____    _____
Fearing, J.    Staab, A.C.J.